**M. EAGLES TOOL WAREHOUSE, INC. d/b/a S & G Tool Aid Corp., Plaintiff,**

**v.**

**FISHER TOOLING COMPANY, INC., d/b/a Astro Pneumatic Tool Company and Stephen Fisher, Defendants.**

**Fisher Tooling Company, Inc. d/b/a Astro Pneumatic Tool Company, Counterclaimant,**

**v.**

**M. Eagles Tool Warehouse, Inc. d/b/a S & G Tool Aid Corp., Automotive Northern Warehouse, Inc., Counterclaim Defendants.**

**No. 97–1568 JAG.**

United States District Court, D. New Jersey.

Oct. 7, 1999.

Robert J. Kipnees, Harold James, Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP, Iselin, NJ, for plaintiff/counterclaim defendant.

Lee H. Udelsman, Demaria Ellis & Bauch, L.L.C., Newark, NJ, for defendants/counterclaimants.

Louis S. Mastriani, Michael L. Doane, Steven E. Adkins, Adduci, Mastriani · & Schaumberg, L.L.P., Washington, D.C., for defendants/counterclaimants.

## OPINION

GREENAWAY, District Judge.

This matter comes before the Court on Plaintiff/Counterclaim Defendant M. Eagles Tool Warehouse, Inc. d/b/a S & G Tool Aid Corp.'s ("S & G") motion for partial summary judgment. For the reasons discussed below, S & G's motion for partial summary judgment is granted in part and denied in part.

## FACTS

*The Parties*

S & G is a New Jersey corporation engaged in the manufacture and wholesale distribution of tools and associated products for the automobile repair industry. Among the tools and parts that S & G sells are abrasive and semi-abrasive discs. Consumers mount these discs onto motor units that rotate these discs so as to remove undesirable material from structures.

The subject matter at issue is a disc, known as an eraser wheel. The eraser wheel is mounted to a hand held motor unit (also known as a "driver") to remove pin-striping, molding adhesive, decals and other adhered items from autobody panels without damaging the paint or body of the vehicle. S & G markets its eraser wheel

under the name "Autobody Eraser Wheel". S & G does not sell the hand held motor unit. S & G sells its eraser wheel alone or in combination with an arbor.[1] Without the arbor, S & G's eraser wheel is only compatible with the motor unit manufactured by Defendant Fisher Tooling Company, Inc. d/b/a Astro Pneumatic Tool Company ("Astro"). When used with the arbor, S & G's eraser wheel is compatible with many different motor units.

Astro is a California corporation also engaged in the business of selling tools and associated products for the automobile repair industry. Defendant Steven Fisher is the President of Astro. For more than twenty years, Astro has sold pneumatic drivers[2] of several different types, which were used with hard grinding and polishing discs, but did not have a driver that was used with a soft eraser wheel. Around 1990, Astro developed a driver that could be combined with a soft eraser wheel to remove pin-stripes, molding adhesive, decals and other adhered items from the body of cars. Astro markets its driver as the "Pinstripe Removal Tool 533E". Astro also sells the "Smart Eraser Pads 400E" to be used with its driver. Astro has obtained a patent protecting the combination of its driver with its eraser wheel.

*The Patent*

United States Patent No. 5,259,914 (the " '914 Patent") is entitled "Portable Vehicle Adhesive Remover for Removing Pinstripes, Decals, Side Moldings and Other Adhered Items from a Vehicle". The '914 Patent names Irving Fisher as the inventor and provides that it is assigned to Fisher Tool Company. The '914 Patent issued on November 9, 1993. It protects "(a) a motor unit assembled inside a housing . . .; (b) an extending shank . . .; and (c) an eraser unit attached. . . ." *See* '914 Patent, Abstract.[3]

---

1. An arbor is a device that can be attached to the stem of any driver to make the Autobody Eraser Wheel compatible with that driver.

2. Pneumatic drivers are air driven as opposed to electrically powered.

3. The '914 Patent is attached to the Second Amended Complaint as Exhibit 4.

The '914 Patent makes six claims, all of which relate to a portable vehicle adhesive remover consisting of an air-powered motor unit, a shank extending therefrom, and an eraser wheel attached to the shank. Claims 1 and 4, protect Astro's pneumatic driver combined with an eraser wheel. Claims 2, 3, 5 and 6 appear to relate to the eraser wheel component of the combination. Claims 2 and 5 require that the "eraser member is made of rubber material." However, those claims incorporate and are dependent on Claims 1 and 4, respectively. Claim 3, dependent on Claim 1, calls for "said erasing surface of said resilient eraser member is flat and round." Finally, Claim 6, dependent on Claim 4, provides the "resilient eraser member rotates at a speed between 3000 rpm and 4000 rpm."

Irving Fisher (now deceased), Astro's founder and then President, filed the '914 Patent application on June 24, 1991.[4] The initial application included thirty claims. In support of that initial application, Irving Fisher asserted that "at the time of filing the application on his invention, he was not aware of prior art relating to his invention and did not perform a patent novelty search for the purpose of discovering such prior art." Cert. Harold James, Ex. C at 20. The Patent Examiner, M. Osele, rejected all thirty claims under 35 U.S.C. § 102(b) as being anticipated by an Astro advertisement. The Patent Examiner concluded that the device claimed had been "offered for sale more than one year prior to the application" and, therefore, was unpatentable. The Examiner also made reference to several devices existing in the prior art, but did not rely on any of those devices in rejecting the '914 Patent application.

In response, Steven Fisher[5] submitted a declaration to the Patent Office attesting that the advertisement could not have occurred until after or right around the time of the filing of the application. Based on that declaration and the accompanying sales receipt for the purchase of the advertisement, the Examiner withdrew his initial rejection and considered the claims of the application. The Examiner rejected Claims 1–3 and 7–30, but allowed Claims 4–6. The Examiner rejected those claims as obvious in light of the prior art. The Examiner expressly noted that "Claims 4–6 are allowable because none of the art of record shows all of the detailed internal workings of the instant claims including the wave washer, the valve screw and 'O' rings, the valve stem and spring, the exhaust sleeve and 'O' ring, and the roll pins." Cert. Harold James, Ex. C at 42.

Thereafter, Steven Fisher voluntarily canceled Claims 10–15 and 25–30. He amended the various other claims to include those specific unique characteristics pointed out by the Examiner. In response, the Examiner issued a notice of allowance for Claims 1–6 and rejected the remaining claims on the basis of obviousness. Finally, Steven Fisher canceled all claims that had not been allowed and the '914 Patent issued in its current form.

*The Present Dispute*

In or about October 1996, Astro charged S & G, in writing, with infringement of the '914 Patent. Astro stated that it believed that "S & G's sales of rubber eraser

---

4. Although this Court discusses the prosecution of the patent history as having been conducted by Irving Fisher and Steven Fisher, it notes that Astro's patent attorney, Thomas Rozsa, actually corresponded with the Patent Office. This Court, however, is aware that Irving Fisher and Steven Fisher provided the underlying information relevant to the prosecution and were integral participants in the prosecution of the '914 Patent.

5. Steven Fisher took over as President of Astro after his father's, Irving Fisher, death on December 25, 1991. Steven Fisher also took over prosecution of the '914 Patent on behalf of Astro. Steven Fisher's declaration stated that he was "authorized to execute this declaration on behalf of myself and also as the President of Fisher Tool ... the assignee of all right, title and interest in the above-referenced patent application." Cert. Harold James, Ex. C at 36.

pads in the United States are contributing to or inducing others to infringe the '914 patent, in violation of 35 U.S.C. § 271(b) and (c)." Second Amended Compl., Ex. 5, October 8, 1996 Letter. Astro further indicated that it would not "hesitate to initiate litigation to enforce its rights and recover all applicable damages and costs." *Id.* Correspondence between the parties ensued and S & G expressed its belief that its eraser pads (1) did not directly infringe the '914 Patent, (2) did not induce infringement of the '914 Patent, (3) did not contributorily infringe the '914 Patent, and (4) were staple articles of commerce capable of non-infringing use. *See* Second Amended Compl., Ex. 6.

Astro chose not to institute a lawsuit against S & G for infringement; instead, Astro began to alert the industry that anyone selling S & G's eraser wheels could be subject to liability for infringement of the '914 Patent. Astro sent letters to S & G's customers stating that sales of S & G's eraser wheels infringe the '914 Patent. *See* Second Amended Compl., Ex. 7. Astro informed S & G's customers that use of S & G's eraser wheel "in a tool that is not made by [Astro] infringe[s] the patent." *Id.* The letters offered S & G's customers three options: (1) discontinue the sale of S & G erasers; (2) screen all customers and refuse to sell the S & G eraser wheel "to anyone that would use it with a tool not made by Astro"; and (3) continue infringing the '914 Patent. *Id.* Finally, the letter indicated that it should be signed and returned to Astro within three weeks to "avoid becoming involved in a lawsuit to stop infringement of our patent". *Id.*

S & G commenced this lawsuit against Astro on March 27, 1997. S & G claims that Astro engaged in unfair competition, tortious interference with contractual relations, tortious interference with prospective economic advantage, false marking and violated 15 U.S.C. § 1125(a) and the New Jersey Fair Trade Act, N.J.Stat.Ann. § 56:4–1. S & G seeks (1) a declaratory judgment declaring that its sale of eraser pads does not infringe the '914 Patent; (2) an injunction ordering Astro to cease its communications with S & G's customers and requiring Astro to write to all S & G's customers retracting its charges of infringement; and (3) damages by reason of Astro's tortious acts.

Astro counterclaims that S & G commits contributory infringement and induces infringement of the '914 Patent through the sale of its eraser wheel. Astro seeks an injunction enjoining S & G from further contributory infringement of, or inducement to infringe, the '914 Patent and damages based on S & G's tortious conduct.

## DISCUSSION

S & G seeks summary judgment declaring the '914 Patent invalid and, in the alternative, finding that its sales of eraser wheels do not infringe the '914 Patent.

### Standard for Summary Judgment

Fed.R.Civ.P. 56(c) provides for summary judgment when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir.1996). In making this determination, the Court must draw all reasonable inferences in favor of the non-movant. *See Hullett v. Towers, Perrin, Forster & Crosby, Inc.,* 38 F.3d 107, 111 (3d Cir. 1994); *National State Bank v. Federal Reserve Bank of New York,* 979 F.2d 1579, 1581 (3d Cir.1992).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *See Jersey Cent. Power & Light Co. v. Lacey Township,* 772 F.2d 1103, 1109 (3d Cir.1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material

fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130–31 (3d Cir.1995). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed.R.Civ.P. 56(e) (requiring non-moving party to "set forth specific facts showing that there is a genuine issue for trial"). "There can be 'no genuine issue as to any material fact' where the nonmoving party's proof is deficient in meeting an essential part of the applicable legal standard, since such failure renders all other facts immaterial." *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1537–38 (Fed.Cir.1991) (quoting *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548). In determining whether there are any issues of material fact, the court must resolve all reasonable doubts as to the existence of a material fact against the moving party. *See Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972).

*Patent Validity*

S & G contends that the '914 Patent is invalid based on obviousness. S & G argues that the driver protected by the '914 Patent is the same as Astro Model 220, which has existed for over twenty years prior to the '914 Patent application, except that gearing was added to reduce the speed of the driver. S & G asserts that, because Astro did not disclose the existence of the Model 220 to the Patent Examiner, the '914 Patent is invalid as obvious and is invalid because Astro committed inequitable conduct before the Patent Office.

■ Initially, "[a] patent shall be presumed valid." 35 U.S.C. § 282. "The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." *Id.* The presumption of patent validity "may be rebutted only by clear and convincing evidence." *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 837

F.2d 1044, 1050 (Fed.Cir.), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988) (citations omitted). S & G has the burden of proving by clear and convincing evidence that the '914 Patent is invalid.

*Obviousness*

■ A patent is invalid under 35 U.S.C. § 103(a) where:

the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

The test for obviousness entails four factual determinations: "(1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations, if any, of nonobviousness." *Uniroyal*, 837 F.2d at 1050; *see also Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

S & G relies on two proffers of evidence for the basis that the driver protected in the '914 Patent is the same driver as the Astro Model 220. First, S & G submits a portion of the deposition testimony of Steven Fisher in which he allegedly states that the two drivers are the same. *See* Cert. Harold James, Ex. A at 116–129, 153. This Court notes, however, that S & G has submitted only one page of the deposition transcript discussing that issue, in which Steven Fisher appears to state that the two drivers have the same *inner workings*. *See id.* at 153. This Court cannot determine the context of Fisher's statements and the line of questioning or statements made before or after the supposed admission. This Court cannot conclude, based on that single page of deposition testimony, that the two drivers are the same.

Second, S & G submits two exhibits from the Fisher deposition that purport to

show the inner configurations of the two drivers. *See* Cert. Harold James, Ex. A, Attachments 7 & 8. S & G couples those exhibits with Fisher's testimony that the internal working parts of the driver claimed in the '914 Patent are also found in Astro Model 220. *See id.* at 116–129. S & G argues that the only reason that the Patent Examiner allowed the '914 Patent to issue was because he found those inner working parts to be unique to the claimed driver.

The Patent Examiner denied many of Astro's initial patent claims as obvious based on the prior art. *See* Cert. Harold James, Ex. C at 39–42. The Examiner found that it would have been obvious to one skilled in the prior art to connect an eraser pad to a pneumatic driver in the manner claimed in the '914 Patent application. *Id.* The Examiner permitted the claims on the basis that the inner workings of the claimed driver was not disclosed in the prior art. *Id.* at 42. Based on the Examiner's reasons for allowance, if the inner workings of the claimed driver had been disclosed by the Astro Model 220, the '914 Patent may have been denied as obvious.

■ Drawing all reasonable inferences in favor of Astro, as required on this motion for summary judgment, this Court can only infer from Steven Fisher's deposition testimony that the two drivers contain similar parts. The exhibits accompanying the deposition testimony showing the inner parts of the two drivers confirm this conclusion. This Court, however, cannot conclude, as urged by S & G, that the inner parts are the same and that they are configured in the same manner. Steven Fish-

er did not testify conclusively in the portion of the deposition testimony submitted to this Court that the inner workings of the two drivers were exactly the same. Also, the diagrams submitted do not mandate the conclusion that the two drivers are the same.

More importantly, S & G has not demonstrated the factors relevant to the test for obviousness. S & G has not (1) shown the scope and content of the prior art, (2) set forth the differences between the claims at issue and the prior art, (3) addressed the level of ordinary skill in the relevant art and (4) shown factors demonstrating obviousness. S & G simply relies on its argument that the two drivers are the same. Having carefully reviewed the record, this Court finds that S & G has failed to satisfy its burden of establishing obviousness by clear and convincing evidence.[6] Thus, this Court denies S & G's motion for summary judgment declaring the '914 Patent invalid as obvious.

*True Inventor*

■ S & G's next contention is that the '914 Patent is invalid under 35 U.S.C. § 102(f) for not naming the true inventor. "A person shall [not] be entitled to a patent [where] he did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f). S & G argues that Steven Fisher admitted in his deposition that Irving Fisher did not invent the driver claimed in the '914 Patent. *See* Cert. Harold James, Ex. A at 111–12. S & G claims that Steven Fisher conceded that the driver was invented by a Japanese company. *See id.*

Again, S & G relies on two pages of deposition testimony without providing

---

**6.** "Indeed, new prior art not before the PTO may so clearly invalidate a patent that the burden is fully sustained merely by proving its existence and applying the proper law; but that has no effect on the presumption or on who has the burden of proof." *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359–60 (Fed.Cir.), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). S & G has offered new prior art that was not considered by the Patent Office. In this instance, that evidence alone does not satisfy S & G's burden. "What the production of new prior art or other invalidating evidence not before the PTO does is to eliminate, or at least reduce, the element of deference due the PTO, thereby partially, if not wholly, discharging the attacker's burden, but neither shifting nor lightening it or changing the standard of proof." *Id.* at 1360.

this Court with the pages of the deposition transcript before or after the proffered testimony. Also, the deposition testimony itself appears to be inconsistent. At a later point in the deposition, after those alleged omissions, Steven Fisher states that Irving Fisher invented the driver claimed in the '914 Patent. *See id.* at 214. The inconsistencies in the testimony relied on by S & G and the incomplete record submitted lead this Court to conclude that there remains a genuine issue of material fact regarding whether Irving Fisher invented the patented driver. S & G has failed to carry its burden of establishing lack of inventorship by clear and convincing evidence. Therefore, this Court denies S & G's motion for summary judgment finding the '914 Patent invalid based on lack of inventorship.

*Inequitable Conduct Before the PTO*

■■■ S & G also argues that the '914 Patent is not enforceable because Astro engaged in inequitable conduct before the Patent Office. S & G asserts that Astro's failure to disclose the Model 220 to the Patent Office constitutes inequitable conduct. "[I]f an applicant withholds material information from the PTO with intent to affect the allowance of claims, the applicant may be found guilty of inequitable conduct and the patent obtained would be rendered unenforceable." *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n,* 958 F.2d 1066, 1070 (Fed.Cir.1992) (citations omitted). "The elements of material-

ity of withheld information and culpable intent must be established by clear and convincing evidence." *Id.* The Court must make a determination that, considering the totality of the circumstances, "the conduct of the patentee is so culpable that its patent should not be enforced." *Id.*

"A patent applicant must disclose any material information to the PTO." *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1258 (Fed.Cir. 1997) (citing 37 C.F.R. § 1.56(a) (1996)), *cert. denied,* 523 U.S. 1071, 118 S.Ct. 1510, 140 L.Ed.2d 665 (1998). "The starting point in defining materiality is the definition of the PTO, which recites, in part, as follows: 'information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and ... [i]t refutes, or is inconsistent with, a position the applicant takes in ... [a]sserting an argument of patentability.'" *Id.* at 1257 (quoting C.F.R. 1.56(b)(2)(ii) (1996)).[7] It is important, however, to note that "a patentee need not cite an otherwise material reference to the PTO if that reference is merely cumulative or is less material than other references already before the examiner." *Baxter Int'l, Inc. v. McGaw, Inc.,* 149 F.3d 1321 (Fed.Cir.1998).

In this instance, Irving Fisher's first submission to the PTO indicated that he knew of no relevant prior art and that he had not done a prior art search prior to filing the '914 Patent application.[8] The

---

7. Before March 1992, 37 C.F.R. § 1.56 provided that undisclosed information is material if there "is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." The '914 Patent was prosecuted from 1991 through 1993. Although S & G does not debate which rule should be applied here, Astro argues for the application of the latter rule. For purposes of this motion, the Court will apply the latter rule. This does not change this Court's conclusion.

8. Astro argues that it was unreasonable for Irving Fisher to believe that the Model 220 driver was relevant prior art at the time. Astro

appears to base this argument on the fact that the Model 220 driver was not used in the automoblie repair industry. That argument is not persuasive. Irving Fisher was in the best position to determine whether the Model 220 driver was similar to the driver disclosed in the '914 Patent. In fact, Irving Fisher, as the inventor of the claimed driver, had full knowledge whether he developed the claimed driver from the Model 220. According to the diagrams submitted to the Court, the drivers appear substantially similar. Further, the one-page of Steven Fisher's deposition testimony submitted by S & G appears to reflect the fact that his father invented the claimed driver by adding a gear reduction device to the Model 220 driver. Thus, he would not

PTO eventually permitted Claims 4–6 of the '914 Patent specifically on the basis of the inner workings of the driver claimed, namely "the wave washer, the valve screw and "O" rings, the valve stem and spring, the exhaust sleeve and "O" ring, and the roll pins." *See* Cert. Harold James, Ex. B, at 42. The Examiner denied the various other claims in light of several patents existing in the prior art, which showed pneumatic, hand held drivers employing either grinding discs or rubber plates and gears to reduce the output speed. *See id.* at 39–42.

■ It cannot reasonably be disputed that, at that point, Astro was aware that the inner workings of the Model 220 driver, which were similar to the claimed driver, could be considered relevant prior art. Rather than bringing the existence of the Model 220 driver to the Examiner's attention, Astro amended the '914 Patent application arguing that "none of the cited prior art patents has disclosed the features of having the detailed internal workings including the valve screw and "O" rings, the valve stem and spring, the exhaust sleeve and "O" ring, the wave washers and the various roll pins." *Id.* at 56. The Examiner, thereafter, permitted three other claims on the basis of the amendments and denied the remainder of the claims.

Materiality should be judged "based upon the overall degree of similarity between the omitted reference and the claimed invention in light of the other prior art before the examiner." *Baxter,* 149 F.3d 1321, 47 U.S.P.Q.2d at 1230. Under the totality of the circumstances, it is clear

that the Model 220 driver would have been material to the Examiner's analysis. The Examiner expressly based the allowance of the '914 Patent on the claimed driver's inner workings. The description of the Model 220 driver submitted to this Court shows that it contains similar inner parts as the driver in the '914 Patent, namely valve screws, "O" rings, the valve stem and spring, the exhaust sleeve and "O" ring, and the roll pins. *See* Cert. Harold James, Ex. A, Attach. 7. This showing is coupled with Stephen Fisher's deposition testimony that the two drivers are similar and contain the same parts. *See* Cert. Harold James, Ex. A at 116–129. This Court finds a high degree of similarity between the two drivers.

The Model 220 driver was not cumulative to other information already before the Examiner. This is reflected by the Examiner's statement that "none of the prior art *of record* shows all of the detailed inner workings of the instant claims". Astro allowed the Patent Examiner to believe that there was ·no prior art disclosing the inner workings of the '914 Patent driver when in fact one of Astro's own models, in existence for over twenty years, may have disclosed those inner workings. A result of a prior art search by the Examiner would not have revealed such information because the Model 220 was not patented. The existence of the Model 220 driver rendered Astro's arguments in favor of patentability misleading if not inconsistent. This Court concludes that the Model 220 driver was material to the '914 Patent application.[9]

have had to conduct a prior art search to know that the Model 220 driver could possibly be considered prior art.

9. Astro asserts several arguments in support of its position that the Model 220 driver was not material. Several of Astro's arguments are disposed of by the Court's discussion of materiality, including whether the Model 220 driver was cumulative to the other prior art considered by the Examiner. Astro also claims that the Model 220 driver is not relevant prior art because it was not used in the

automobile repair industry. That argument is without merit. The Examiner considered several patents in the prior art that included hand held pneumatic drivers used as grinding tools as opposed to eraser repair tools. *See* Cert. Harold James, Ex. C at 59–63. It is clear that the Examiner found those tools relevant because he denied several of Astro's original patent claims on the basis of those tools. *Id.*

Furthermore, this Court finds that Astro intended to deceive the PTO. "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed.Cir.1995). "Direct proof of wrongful intent is rarely available ..." *LaBounty*, 958 F.2d at 1076. "[I]ntent is generally inferred from the sum total of the applicant's conduct." *Baxter*, 149 F.3d 1321, 47 U.S.P.Q.2d at 1231 (finding intent to deceive where applicant disclosed multitudes of prior art to PTO, but failed to disclose its own prior invention which was used extensively to develop claimed invention); *see also Paragon Podiatry Lab., Inc. v. KLM Lab., Inc.*, 984 F.2d 1182, 1190 (Fed.Cir.1993) (finding intent to deceive where applicant submitted deceptive affidavits to the PTO); *LaBounty*, 958 F.2d at 1076 (finding intent to deceive where applicant withheld "its own known prior art devices and by making an argument for patentability which could not have been made had the art been disclosed.").

In this instance, it is undisputed that Irving Fisher and Steven Fisher were familiar with the critical features of both the driver in the '914 Patent and the Model 220 driver.[10] Steven Fisher's deposition testimony establishes that the drivers were similar. In fact, the testimony appears to show that the only changes to the Model 220 driver were the addition of a gearing device and the shank to attach the rubber eraser pad to the driver. *See* Cert. Harold Fisher, Ex. A at 28, 153. Once the Examiner notified Astro that Claims 4–6 of the application were being allowed on the basis of the inner workings of the driver, Astro undeniably became aware of the relevancy of the Model 220 driver.[11] Rather than notifying the Examiner of the existence of the Model 220, however, Astro amended the remainder of its application by adding a description of the inner workings to the remainder of its application while narrowly arguing that none of the *cited* prior art revealed those inner workings. In response, the Examiner allowed Claims 1–3 and rejected the remainder as still obvious in light of the prior art.

Based on the totality of the circumstances, this Court finds clear and convincing evidence that Astro intended to mislead or deceive the Examiner. Astro was aware of the single most important device relevant to the allowance of its claims. Astro knew that the Examiner was unaware of the existence of the Model 220 and consciously failed to disclose its existence. Astro also argued to the Examiner in support of reliance that "none of the *cited* prior art patents has disclosed the features of having the detailed internal

---

**10.** Clearly, Irving Fisher was familiar with both drivers as President of Astro and the claimed inventor of the driver in the '914 Patent. Steven Fisher's familiarity with both drivers is reflected from his demonstrated knowledge in his deposition testimony, his involvement in the prosecution of the '914 Patent and as President of Astro.

**11.** Astro contends that, as a corporation, it cannot be considered the prosecutor of the '914 Patent and that the individual knowledge of its agents should not be imputed to it. Astro appears to argue that its attorney prosecuted the '914 Patent and that he was unaware of the existence of the Model 220 driver. This argument is without merit. Both Irving Fisher and Steven Fisher were intimately involved with the prosecution of the '914 Patent. Irving Fisher initially applied for the patent and assigned it to his corporation, Astro. Steven Fisher took over as Astro's President after his father's death and submitted a declaration to the Patent Office on Astro's behalf. The declaration provides that Steven Fisher was "authorized to execute this declaration on behalf of myself and also as the President of Fisher Tool Co." and he signed the declaration as the President of Fisher Tool Company. Cert. Harold James, Ex. C at 35–36. It is disingenuous for Astro to argue before this Court that its agents should be treated as individuals acting alone on their own behalf. The parties proceeded with the prosecution in their capacity as representatives of Astro. The overall conduct of the parties show that the '914 Patent was prosecuted by Astro as opposed to any single individual.

workings including the valve screw and "O" rings, the valve stem and spring, the exhaust sleeve and "O" ring, the wave washers and the various roll pins." Cert. Harold James, Ex. C, at 56. When in fact, Astro was aware of the existence of the similar Model 220 driver. Astro could not have made such an argument in favor of patentability had the Model 220 driver been disclosed. Astro has made no proffer to this Court of good faith in its omission.[12]

Weighing the materiality of the omission and Astro's intent, this Court concludes that Astro's conduct "is so culpable that the patent should be held unenforceable." *Baxter*, 149 F.3d 1321, 47 U.S.P.Q.2d at 1229 (citing *LaBounty*, 958 F.2d at 1070). There are no genuine issues of material fact regarding this issue.[13] This Court grants S & G summary judgment regarding Astro's inequitable conduct before the PTO and holds the '914 Patent unenforceable.

Based on this Court's determination regarding Astro's inequitable conduct before the PTO, it need not consider S & G's arguments regarding Astro's alleged patent misuse. Furthermore, this Court need not address S & G's motion for summary judgment regarding infringement of the '914 Patent.[14] This Court's decision moots both S & G's request for a declaratory judgment of noninfringement and Astro's counterclaims of contributory infringement and inducement to infringe.

*Astro's Letters and Patent Markings*

S & G argues that Astro's marking of its eraser wheel with the '914 Patent number violates the false marking law, 35 U.S.C. § 292. The false marking law provides that

> Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public ... [s]hall be fined not more than $500 for every such offense.

35 U.S.C. § 292. "Requisites for liability under § 292 include that the advertising or use of the word 'patented' be made in conjunction with a device which is not patented and an intent to deceive." *Sadler–Cisar, Inc. v. Commercial Sales Network, Inc.*, 786 F.Supp. 1287, 1296 (N.D.Ohio 1991); *see also Johnston v. Textron, Inc.*, 579 F.Supp. 783, 795 (D.R.I.1984) (noting "prerequisite for a violation of [§ 292] is a

12. Instead, Astro argues that S & G cannot show intent to deceive. Astro appears to rely on the fact that Irving Fisher died six months after the filing of the '914 Patent. Irving Fisher's unfortunate death is of no significance to Astro's intent to deceive. As noted above, this Court finds that the prosecution of the '914 Patent was on behalf of Astro. Other agents of the company picked up the prosecution of the '914 Patent after Irving Fisher's death, including Steven Fisher and Astro's attorney, Thomas I. Rozsa. Furthermore, S & G's failure to show direct evidence of intent to deceive is not fatal to its proffer. " '[S]moking gun' evidence is not required in order to establish an intent to deceive." *Paragon*, 984 F.2d at 1189. As discussed above, intent may be inferred from the totality of the circumstances.

13. Astro has not raised a genuine issue of material fact regarding inequitable conduct before the PTO. The patent prosecution history is clear, Steven Fisher's deposition testimony cannot be disputed and the exhibits showing the inner workings of the two drivers are not subject to dispute. "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." *Schoch*, 912 F.2d at 657; *see also* Fed. R.Civ.P. 56(e).

14. Although this Court, anticipating that this matter will be appealed, was predisposed to considering Plaintiff's arguments regarding infringement, the Court concludes that such consideration would not be appropriate in this instance. In opposition to S & G's motion for summary judgment, Astro requests that it be allotted sufficient time for discovery, pursuant to Fed.R.Civ.P. 56(f). It should be noted that S & G filed its Second Amended Complaint on October 5, 1998. Astro answered that Complaint on October 19, 1998. One month later, on November 18, 1998, S & G filed its notice of motion for summary judgment. In light of the timing of the instant motion, this Court has decided against considering the issue of infringement.

finding of an intent to deceive."). S & G has the burden of showing that Astro "acted with the specific intent to deceive the public." *Sadler–Cisar,* 786 F.Supp. at 1296.

In this motion for summary judgment, S & G argues that Astro inappropriately marked its eraser wheels, packaged and sold separately, with the term "patented" and the '914 Patent number. Astro does not dispute that it marked its eraser wheels as patented under the '914 Patent. Astro, however, argues that there are genuine issues of material fact regarding whether it intended to deceive the public.[15]

■ S & G has not demonstrated that Astro marked its eraser wheels with the '914 Patent number in an attempt to deceive customers. S & G has not presented sufficient evidence for this Court to draw such a conclusion. Astro marked some of its eraser wheels with the '914 Patent number and others with the term "patent pending". With respect to those marked with the term "patent pending", Astro claims that the markings relate to U.S.Patent No. 5,624,990. S & G has not refuted that contention.[16] S & G has proffered no evidence with respect to Astro's intent as to the wheels marked with

the '914 Patent number. There are genuine issues of material fact regarding Astro's intent. In addition, Astro requests more time for discovery, pursuant to Fed. R.Civ.P. 56(f). For those reasons, S & G's motion for summary judgment regarding Astro's alleged violation of § 292 is denied.

*Lanham Act*

■ S & G also argues that Astro's false marking activities and threatening the trade with infringement suits constitute unfair competition and violate 15 U.S.C. § 1125(a) (the "Lanham Act").[17] Astro argues that the letters it sent to S & G's customers constituted a good faith attempt to enforce its patent. This Court finds that Astro's actions violated the Lanham Act.

The Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

15. Astro claims that it marked its eraser wheels with the '914 Patent number in good faith. Astro asserts that its attorney informed it that it would be proper to mark its eraser wheels in such a manner because the wheels constituted a part of the '914 Patent.

Astro also points out that, although S & G argues in its brief that Astro improperly marked its eraser wheels with the '914 Patent number, S & G's Second Amended Complaint alleges as the basis for this cause of action the fact that Astro marked some of its eraser wheels with the term "patent pending" when in fact there was no patent application pending before the Patent Office. For purposes of this motion, this Court, nevertheless, will consider S & G's arguments.

16. United States Patent No. 5,624,990 was not presented to this Court. Based on the parties' submissions, this Court assumes that the patent protects the process of manufacturing Astro's eraser wheels. *See* Decl. Steven Fisher ¶ 10 (stating Astro's eraser pad "is

manufactured for Astro by a U.S. company in accordance with the claims of U.S.Patent No. 5,624,990").

17. Section VI of S & G's brief in support of its motion for summary judgment argues that "Astro's letters to the trade and its Patent markings were wrongful and actionable." S & G Mem.Supp. Summary Judgment at 37. This Court notes that S & G does not cite any law or relate its discussion to any of the counts in its Complaint. Furthermore, S & G does not demand judgment as a matter of law on any issue. Astro has not moved for summary judgment to dismiss any of S & G's claims. Thus, S & G's request that this Court declare Astro's conduct actionable is denied. S & G must allege a certain cause of action and carry its burden of proof with respect to satisfying the elements of that cause of action. In the absence of such a showing, this Court is not vested with authority to determine for a litigant whether or not some conduct was "wrongful and actionable."

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to origin, sponsorship, or approval of his or her goods, services or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). "The Lanham Act is designed to, among other things, protect competitors from misrepresentations which a defendant makes about its own or another's products and which relate to the principal bases of competition among sellers." *Brandt Consol., Inc. v. Agrimar Corp.*, 801 F.Supp. 164, 174 (C.D.Ill.1992). It is designed to protect against such activities which could "have a direct and major impact in diverting sales from the plaintiff to the defendant." *Id.*

To establish a violation of the Lanham Act, S & G must establish:

(1) [Astro] made false representations about [its] own or [S & G's] products;

(2) The misrepresented products travel in interstate commerce;

(3) The misrepresentations deceive or are likely to deceive a substantial segment of the intended audience (present or potential customers of [S & G] and [Astro]); and

(4) The misrepresentations are material (likely to influence the purchasing deci-

sion) and they have caused injury, or are likely to do so.

*Id.* "The well settled rule is that there is no requirement under the Lanham Act that a false representation be made wilfully or with intent to deceive. A mistake is not a defense to an action under [the Lanham Act]." *Id.* (citing *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648 (3d Cir.1958)).

First, it is not disputed that Astro marked its eraser wheels in many instances with the '914 Patent number and in other instances with the term "patent pending." Clearly, such markings would mislead any reasonable consumer to conclude that Astro's wheel was either patented or in the process of receiving a patent. In either event, neither of these two conclusions would be correct.[18] These actions are evidence that Astro made false representations about its eraser wheel. Second, Astro's eraser wheels traveled in interstate commerce. Third, Astro's misrepresentations, coupled with its letters to S & G's customers, had the impact of deceiving S & G's customers and of diverting sales from S & G to Astro.

Finally, the letters Astro sent to S & G's customers threatening litigation were misleading. The letters stated that "[c]ustomers who use the [S & G] Eraser Wheel in a tool that is not made by Astro Pneumatic Tool infringe the patent. Your sales assist this infringement and, therefore, make you legally liable." Cert. Harold James, Ex. A, Attach. 45. This statement is an incorrect and misleading recitation of patent law.[19] The threatening nature of the let-

---

**18.** It is undisputed that Astro's eraser wheels are not patented and there was never a patent application pending that would protect the eraser wheels.

**19.** Contributory infringement requires that there must be a direct infringement first. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961). The '914 Patent is a combination patent covering the claimed driver when combined with the claimed eraser wheel. The

only way that use of the S & G eraser wheel could arguably directly infringe the '914 Patent would be where the eraser wheel was used with the driver claimed in the '914 Patent or a driver similar to it. Astro's claim that contributory infringement occurs with use of the wheel with a driver not made by Astro is clearly misleading. The record reflects that the S & G wheel could be used with an arbor to adapt to many drivers other than the type manufactured by Astro, including electric drivers. Use of the wheel in this

ter, when viewed in light of Astro's false marking of its eraser wheels, leads this Court to conclude that Astro's misrepresentations were material and caused S & G injury. The facts support this conclusion. Astro's conduct has led several vendors of S & G's eraser wheels to sign agreements in which they concede that Astro's patent is valid and that they will not purchase S & G's eraser wheels because they infringe the '914 Patent.[20]

Regardless of Astro's motivations, its conduct satisfied the requisite elements of the test for determining a violation of the Lanham Act. No genuine issues of material fact exist which preclude the grant of summary judgment. Thus, S & G's motion for summary judgment with respect to Astro's violation of the Lanham Act is granted.

### Attorneys' Fees

S & G argues that it is entitled to attorneys' fees based on Astro's inequitable conduct and improper use of litigation threats. "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. S & G claims that this is an exceptional case justifying an award of attorneys' fees. This Court disagrees.

Although this Court concludes that Astro's conduct may have been improper regarding the marking of its product and the letters sent to S & G's customers, S & G

has not presented evidence that this is an exceptional case. S & G has the burden of establishing the exceptional nature of this case by clear and convincing evidence. *See Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.,* 15 F.3d 1573, 1584 (Fed.Cir. 1993) (stating "[a]s the party moving for attorney fees, the burden was on EMS to prove the exceptional nature of the case by clear and convincing evidence."). S & G has not met its burden. S & G's motion for summary judgment on the award of its attorneys' fees is denied.

### Rule 11 Sanctions

Astro's brief in opposition to S & G's motion for summary judgment presents a vigorous argument in support of its request that this Court deny S & G's motion with respect to imposing sanctions pursuant to Fed.R.Civ.P. 11. This Court notes that S & G did not include a discussion of Rule 11 sanctions in its moving brief. S & G, however, included in its conclusion the summary request that this Court sanction Astro pursuant to Rule 11.[21]

This Court denies S & G summary judgment motion seeking Rule 11 sanctions. S & G fails to argue in favor of such a request, nor does it make a showing of its basis for seeking Rule 11 sanctions. Furthermore, S & G's motion for Rule 11 sanctions is improperly coupled with this motion for summary judgment. *See* Fed. R.Civ.P. 11(c)(1)(A) (requiring "[a] motion for sanctions under this rule shall be made

---

manner would not directly infringe the '914 Patent.

**20.** Astro filed counterclaims in this action against S & G and several of its customers, including Automotive Paint Warehouse, Automotive Northern Warehouse, C.R.C. Line ("C.R.C.") and Pro Tool. Counterclaim Defendants C.R.C. and Pro Tool entered into stipulations of dismissal with Astro. In those stipulations, C.R.C. and Pro Tool agreed that the sale of S & G eraser wheels constituted infringement of the '914 Patent. The parties agreed to refrain from selling those wheels and also agreed to return any S & G wheels in their inventory to S & G. In exchange, Astro agreed to dismiss its counterclaims against the parties.

**21.** This Court notes that S & G's conclusion also makes unsupported requests for summary judgment regarding its claims for common law unfair competition, tortious interference with contractual relations and tortious interference with prospective economic advantage. This Court denies S & G's motion for summary judgment on those issues. S & G has not demonstrated that there are no genuine issues of material fact. Instead it appears that S & G has made unsupported requests and left this Court to determine why there are no genuine issues of material fact and why it is entitled to judgment as a matter of law on those issues. This Court refuses to entertain such a request. S & G has simply failed to sustain its burden on this motion for summary judgment.

separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b)"). Accordingly, this Court denies S & G's motion for summary judgment regarding Rule 11 sanctions.

### CONCLUSION

S & G's motion for summary judgment is granted in part and denied in part. This Court finds that Astro's '914 Patent is invalid and unenforceable on the basis of inequitable conduct before the Patent Office. S & G is entitled to summary judgment as to Count One of its Second Amended Complaint and the sole count of Astro's Counterclaim. This Court further finds that Astro's actions of false marking and sending letters to S & G's customers constitute a violation of the Lanham Act and S & G is entitled to summary judgment on Count Three of its Second Amended Complaint. This Court denies S & G summary judgment on Counts Two, Five, Six and Seven of its Second Amended Counterclaim. This Court further denies S & G summary judgment on its motion seeking attorneys' fees and Rule 11 sanctions against Astro.