M. EAGLES TOOL WAREHOUSE, INC. d/b/a S & G TOOL AID CORP., Plaintiff,

v.

FISHER TOOLING COMPANY, INC., d/b/a Astro Pneumatic Tool Company and Stephen Fisher, Defendants.

Fisher Tooling Company, Inc. d/b/a Astro Pneumatic Tool Company, Counterclaimant,

v.

M. Eagles Tool Warehouse, Inc. d/b/a S & G Tool Aid Corp., Automotive Northern Warehouse, Inc., Counterclaim Defendants.

No. CIV.A. 97–1568(JAG).

United States District Court, D. New Jersey.

June 3, 2002.

308

Harold James, Esq., James and Franklin, LLP, New York, NY, for Plaintiff/Counterclaim Defendant.

Robert J. Kipnees, Esq., Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP, Iselin, for Plaintiff/Counterclaim Defendant.

Joanne M. Maxwell, Esq., Littler Mendelson, P.C., Morristown, for Defendants/Counterclaimants.

Louis S. Mastriani, Esq., Michael L. Doane, Esq., Steven E. Adkins, Esq., Adduci, Mastriani & Schaumberg, L.L.P., Washington, D.C., for Defendants/Counterclaimants.

## OPINION

GREENAWAY, District Judge.

These matters come before the Court on motions by Plaintiff/Counterclaim Defendant M. Eagles Tool Warehouse, Inc. d/b/a S & G Tool Aid Corp. ("S & G"), Defendant Steven Fisher, in his individual capacity ("Fisher"), and Defendant/Counterclaim Plaintiff Fisher Tooling Company, Inc. d/b/a Astro Pneumatic Tool Company ("Astro").[1]

For the reasons set forth below, this Court: (1) GRANTS Defendant Fisher's motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(2), for lack of personal jurisdiction; (2) GRANTS Astro's motion for summary judgment as to S & G's tortious interference with contractual relations; (3) GRANTS Astro's motion for summary judgment as to S & G's false marking claim, pursuant to 35 U.S.C. § 292; and (4) DENIES Astro's motion for summary judgment as to S & G's (a) unfair competition claims (both at common law and pursuant to the New Jersey Fair Trade Act), and (b) tortious interference with prospective economic advantage claim. This Court also: (1) GRANTS S & G's cross-motion for summary judgment as to its (a) § 43(a) Lanham Act claim, (b) attorneys' fees claim, pursuant to 35 U.S.C. § 292, (c) unfair competition claim (both at common law and pursuant to the New Jersey Fair

Trade Act), and (d) tortious interference with a prospective business advantage claim; and (2) DENIES S & G's cross-motion for summary judgment as to its false marking claim.

## I. THIS COURT'S PREVIOUS OPINION

In a previous Opinion in this matter, *M. Eagles*, 68 F.Supp.2d at 504, this Court concluded that the evidence submitted supported a conclusion that the inequitable conduct before the Patent and Trademark Office ("PTO") on the part of Fisher and Astro (collectively "Defendants") rendered the '914 patent unenforceable. This Court stated that because Defendants had failed to inform the PTO of the existence of its Model 220 driver, it was reasonable to infer that Defendants acted in a manner that intended to deceive the PTO. *Id.* at 503–04. Specifically, this Court observed that Defendants' failure to advise the PTO of the existence of the Model 220 driver constituted failure to advise that Office of relevant prior art. *Id.* at 502. In light of its conclusion that the '914 patent was unenforceable, this Court dismissed S & G's request for a declaratory judgment of noninfringement and Astro's counterclaims of contributory infringement and inducement to infringe as moot. *Id.* at 504.

In addition, this Court granted S & G's summary judgment motion as to its § 43(a) Lanham Act claim.[2] *Id.* at 505–07. In that claim, S & G alleged that by marking its eraser wheels as covered under the '914 patent or as "patent pending," Astro deceived the consumer market, in violation of the Lanham Act. *Id.* In granting S & G's claim, this Court noted that Astro's motivation and intent did not affect

---

1. For a detailed discussion of the facts that give rise to the instant litigation, see *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Company, Inc.*, 68 F.Supp.2d 494, 494–98 (D.N.J.1999).

2. Section 43(a) of the Act, codified at 15 U.S.C. § 1125(a), states that:
 (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word,

the Court's analysis under the Act because "there is no requirement under the Lanham Act that a false representation be made willfully or with intent to deceive. A mistake is not a defense to an action under [the Lanham Act]." *Id.* at 506 (alteration in original) (citations omitted).

As to S & G's motion for summary judgment as to its false marking claim, pursuant to 35 U.S.C. § 292, this Court concluded that S & G failed to demonstrate that no genuine issue as to a material fact existed concerning Astro's intent to deceive the consumer public. *Id.* at 505. As to S & G's motion for summary judg-

ment on its claim for attorneys' fees, pursuant to 35 U.S.C. § 285, and motion for sanctions, pursuant to FED. R. CIV. P. 11,[3] this Court concluded that S & G had submitted insufficient evidence to persuade this Court that it was entitled to relief as a matter of law. *Id.* at 507–508.

## II. CLAIMS PRESENTED IN THE IN- STANT MOTIONS

### A. Motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56(c)

In its motion for summary judgment, pursuant to FED. R. CIV. P. 56(c), Astro

---

term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

(2) As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

(3) In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

**3.** Rule 11 states, in relevant part, that:

[b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FED. R. CIV. P. 11(b). The Rule further states that:

[i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

*Id.* at 11(c).

requests that this Court: (1) grant summary judgment in its favor as to S & G's claims for (a) unfair competition (both at common law and pursuant to the New Jersey Fair Trade Act), and (b) S & G's claims for tortious interference with prospective economic advantage and tortious interference with contractual relations, in light of the Federal Circuit's holding in *Zenith Electronics Corporation v. Exzec Incorporated,* 182 F.3d 1340 (Fed.Cir. 1999); (2) dismiss the action, in its entirety, against Defendant Fisher, pursuant to FED. R. CIV. P. 12(b)(2), for lack of personal jurisdiction; and (3) grant summary judgment in its favor with regard to S & G's false marking claim, pursuant to 35 U.S.C. § 292.[4]

Conversely, S & G's cross-motion for summary judgment requests that this Court grant summary judgment in S & G's favor as to: (1) its Lanham Act claim[5]; (2) its attorneys' fees claim, pursuant to 35 U.S.C. § 285;[6] (3) its false marking claim; and (4) its claims for unfair competition (both common law and statutory) and tortious interference with prospective economic advantage.[7]

## B. Defendant Fisher's motion to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2)

A district court may exercise personal jurisdiction over a nonresident of the state in which that court sits only to the extent authorized by the laws of New Jersey. *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir.1987). New Jersey's long-arm statute permits this Court to exercise jurisdiction to the fullest extent allowable un-

---

4. Section 292 states that:

(a) Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, offered for sale, or sold by such person within the United States, or imported by the person into the United States the name or any imitation of the name of the patentee, the patent number, or the words "patent," "patentee," or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made, offered for sale, sold, or imported into the United States by or with the consent of the patentee; or

Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public; or

Whoever marks upon, or affixes to, or uses in advertising in connection with any article, the words "patent applied for," "patent pending," or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public—

Shall be fined not more than $500 for every such offense.

(b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

5. As aforementioned, in its previous Opinion, this Court granted S & G's motion as to its Lanham Act claim. Although Astro does not seek this Court's reevaluation of its earlier decision in light of the Federal Circuit's opinion in *Zenith, supra,* S & G requests that this Court reaffirm its earlier decision regarding S & G's Lanham Act claim. (Defs.' Mem. at 1, n. 1; Pl.'s Mem. at 5.)

6. Section 285 states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."

7. As discussed more fully, *infra,* S & G consents to Astro's motion as it pertains to the dismissal of this action against Defendant Fisher. (Pl.'s Mem. at 31.) In addition, S & G consents to this Court's grant of summary judgment in favor of Astro as to its claim for tortious interference with contractual relations (as distinguished from S & G's claim for tortious interference with prospective economic advantage). (*Id.* at 33.)

der the Constitution of the United States. *Avdel Corp. v. Mecure*, 58 N.J. 264, 268, 277 A.2d 207 (1971); N.J. Ct. R. 4:4–4. Therefore, under usual circumstances, this Court's analysis would focus on whether its exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment.

 In the instant matter, Defendant Fisher renews a previously filed motion to dismiss S & G's complaint as to him—as an individual—for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). S & G does not provide argument in opposition to Defendant Fisher's renewed motion; in fact, S & G consents to the motion. (Pl.'s Mem. at 31.) This Court, therefore, dismisses S & G's complaint—in its entirety—to the extent that it seeks relief from Fisher, in his individual capacity.[8]

### C. Standard of review for a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56(c)

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir.1996). In making this determination, the Court must draw all reasonable inferences in favor of the non-movant. *Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir.1994); *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1581 (3d Cir.1992).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township*, 772 F.2d 1103, 1109 (3d Cir.1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130–31 (3d Cir.1995). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir.1990); *see also* FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

---

**8.** The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant if that defendant has "minimal contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Minimum contacts are established when there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citation omitted). Minimum contacts can be established by either general jurisdiction or specific jurisdiction. General jurisdiction is based upon the defendant's "continuous and systematic" contacts with the forum state and may be based on the defendant's non-forum related activities. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir.2001). In contrast, specific jurisdiction is invoked only when the plaintiff's claim is related to, or arises out of, the defendant's contact with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Even if this Court were to apply the above standards, there would be no basis for establishing its jurisdiction over Fisher.

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir.1992) (quoting *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548). In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences-including on issues of credibility-in favor of the non-moving party. *Watts v. Univ. of Del.*, 622 F.2d 47, 50 (3d Cir.1980).

### D. S & G's cross-motion for summary judgment as to its Lanham Act claim

#### 1. The effect of Zenith on this Court's previous analysis of S & G's Lanham Act claim

■ In this Court's previous Opinion, it partially granted and partially denied S & G's motion for summary judgment. Specifically, this Court's determination that Astro's actions violated the Lanham Act relied upon the principle that "there is no requirement under the Lanham Act that a false representation be made wilfully or with intent to deceive." *M. Eagles*, 68 F.Supp.2d at 506 (D.N.J.1999) (quoting *Brandt Consol., Inc. v. Agrimar Corp.*, 801 F.Supp. 164, 174 (C.D.Ill.1992)). As a result, this Court concluded that *"[r]egardless of Astro's motivations*, its conduct satisfied the requisite elements of the test for determining a violation of the Lanham Act." 68 F.Supp.2d at 507 (emphasis added).

After this Court issued its Order, but before this Court issued its Opinion in support of that Order, the Federal Circuit issued its opinion in *Zenith Electronics Corporation v. Exzec Incorporated*, 182 F.3d at 1340 (Fed.Cir.1999). In *Zenith*, the court evaluated "the potential conflict between the patent laws and the federal proscription against unfair trade practices contained in the Lanham Act." 182 F.3d at 1352. The *Zenith* court found that:

[A] patentee's statements regarding its patent rights are conditionally privileged under the patent laws, so that such statements are not actionable unless made in bad faith.

*Id.* at 1353. Thus, the Circuit concluded that:

[B]efore a patentee may be held liable under § 43(a) for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, *the marketplace activity must have been undertaken in bad faith.* This prerequisite is a function of the interaction between the Lanham Act and patent law, and is in addition to the elements required by § 43(a) itself, as § 43(a) alone does not require bad faith.

*Id.* (emphasis added).

In light of the language in *Zenith*, which is directly contrary to this Court's rationale with respect to S & G's Lanham Act Claim, this Court will set aside its prior findings and reevaluate S & G's Lanham Act claim. This Court notes, however, that *Zenith* does not alter this Court's analysis as to the elements required by § 43(a) itself. As the Federal Circuit noted, the bad faith requirement is "in addition to the elements required by § 43(a)," and "give[s] effect both to the rights of patentees as protected by the patent laws under ordinary circumstances, and to the salutary purposes of the Lanham Act to promote fair competition in the marketplace." *Id.* at 1353–1354. In concluding

that Astro's motivation and intent were irrelevant to a determination of liability under the Lanham Act, this Court reached a conclusion which has since proven unsupportable. Accordingly, this Court's previous analysis of S & G's Lanham Act must be reevaluated, but only to the extent that it did not require evidence that Astro acted in bad faith.[9]

**2. Reevaluation of S & G's cross-motion for summary judgment as to S & G's Lanham Act claim in light of Zenith's "bad faith" requirement**

In or about October 1996, Astro charged S & G, in writing, with infringement of the '914 patent.[10] Astro stated its belief that "S & G's sales of rubber eraser pads in the United States are contributing to or inducing others to infringe the '914 patent, in violation of 35 U.S.C. § 271(b) and (c)." (Second Amended Compl., Ex. 5, October 8, 1996 Letter.) Astro further indicated that it would not "hesitate to initiate litigation to enforce its rights and recover all applicable damages and costs." *Id.* Instead of instituting a lawsuit against S & G for infringement, however, Astro began to alert the industry that anyone selling S & G's eraser wheels could be subject to liability for infringement of the '914 Patent. Specifically, Astro sent letters to S & G's customers claiming that: S & G's eraser wheels infringe the '914 Patent; and use of S & G's eraser wheel "in a tool that is not made by [Astro] infringe[s] the patent." (Second Amended Compl., Ex. 7.) The let-

ters offered S & G's customers three options: (1) discontinue the sale of S & G erasers; (2) screen all customers and refuse to sell the S & G wheel "to anyone that would use it with a tool not made by Astro"; or (3) continue infringing the '914 Patent. *Id.*

The *Zenith* court did not elucidate a test for determining bad faith, instead it advised that "what constitutes bad faith remains to be determined on a case by case basis." 182 F.3d at 1354. Nonetheless, the Federal Circuit suggested, "[o]bviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out." *Id.* Finally, the Federal Circuit noted that "bad faith may encompass subjective as well as objective considerations, and that the patentee's particular statements themselves are not irrelevant to determining bad faith." *Id.* at 1355 (citing *Mikohn Gaming Corp. v. Acres Gaming, Inc.,* 165 F.3d 891, 897 (Fed.Cir.1998)).

Astro is entitled to a presumption of good faith. *The Gleason Works v. Oerlikon Geartec, AG,* 141 F.Supp.2d 334, 341 (W.D.N.Y.2001) ("the law recognizes a presumption that the assertion of a duly granted patent is made in good faith...") (citations omitted). At the summary judgment stage, "more than a mere allegation of knowledge of the patent's unenforceabil-

---

**9.** This Court also notes that *Zenith* does not alter this Court's previous conclusion that the '914 patent was unenforceable. Defendants do not now dispute that they had failed to inform the PTO of the existence of its Model 220 driver, or that said failure had raised a reasonable inference that Defendants acted in a manner intended to deceive the PTO. Defendants also do not now dispute the fact that Defendants' failure to advise the PTO of the existence of the Model 220 driver constituted failure to advise that Office of rele-

vant prior art. As a result, the record supported and continues to support a conclusion of inequitable conduct before the PTO on the part of Defendants, rendering the '914 patent unenforceable.

**10.** The facts concerning Astro's enforcement of its patent are undisputed. For convenience, the relevant facts are recapitulated from this Court's previous Opinion. *See M. Eagles,* 68 F.Supp.2d at 496–98.

ity would be required." *Dow Chemical Co. v. Exxon Corp.*, 139 F.3d 1470, 1476 n. 6 (Fed.Cir.1998). Thus, S & G will prevail on its motion for summary judgment as to its Lanham Act claim if it produces undisputed evidence demonstrating that Astro knew that the '914 patent was unenforceable when it advised the marketplace of the scope of its patent.

### a. The Lindner Reports

In support of its argument that Astro acted in bad faith, S & G submits an expert report and a supplemental report prepared by Melvin Lindner, an engineer.[11] Melvin Lindner is a licensed professional engineer in New York State. (Cert. of Harold James submitted in Support of Mot. for Summ. J., Ex. 3 (hereinafter *"Lindner Report"*).) According to his resume, Lindner has over thirty years of experience as an engineer, including six years of expertise as a consulting engineer in the fields of residential and commercial building renovation and construction. Lindner also holds patents on three tools, although none of those tools are described or explained to this Court. Indeed, although Lindner holds an expansive level of engineer expertise, it does not appear that Lindner has any expertise with automotive tools or tools similar to those at issue in the instant litigation.

Lindner states that there is a close similarity of the internal parts of the Model 533 driver as compared to the Model 220 driver. (*Lindner Report;* Cert. of Harold James submitted in Support of Mot. for Summ. J., Ex. 4 (hereinafter *"Supp. Report"*)(collectively *"Lindner Reports"*).) The Lindner Reports further assert that the similarity of the air controls and the common use of particular parts in other grinding tools support the PTO's initial denial of most of Astro's patent claims as obvious based upon prior art. S & G argues that the Lindner Reports demonstrate Astro's bad faith behavior, both before the PTO and in the consumer market. S & G further argues that the similarity of the internal mechanics of the drivers renders any attempt to patent a particular driver misleading—if not outright fraudulent.

■ This Court finds that the Lindner Reports fail to provide persuasive evidence demonstrating that Astro acted, or intended to act, in an actual or constructively fraudulent manner. Moreover, the reports shed no light on whether Astro knew that the '914 patent was unenforceable when it threatened Defendants with infringement. Indeed, while the assertions set forth by his reports as to basic mechanical structures may be accurate, Lindner does not conclude that Astro necessarily acted in a fraudulent manner because of the identified similarities. Indeed, such a conclusion by Lindner would be speculative, at best. It would appear that S & G seeks to argue that when a patent covers a tool that is comprised of working parts similar to a pre-existing tool, the patenting party is seeking to mislead or defraud the consumer market. There is no basis in law for such a conclusion, and more important, S & G has failed to provide support for such a conclusion. This Court, therefore, concludes that the Lindner Reports fail to establish that Astro acted in bad faith.

---

**11.** Astro objects to the qualifications of, and reports submitted by, Melvin Lindner. Specifically, Astro argues that Lindner does not have, nor does S & G proffer, evidence to support that Lindner has the requisite credentials to qualify as an expert in the design and operation of pneumatic drivers. (Defs.' Reply Mem. at 8–9.) Rather than exclude Lindner's reports, however, this Court concludes that after a thorough investigation the reports do not provide credible evidence tending to demonstrate that Astro acted in bad faith.

#### b. Astro's inequitable conduct before the PTO

Additionally, S & G contends that Astro's inequitable conduct before the PTO-previously determined by this Court-coupled with its zealous attempts to enforce its patent constitute evidence of bad faith.[12] Astro responds that this Court's finding of unenforceability of the '914 patent does not support a finding of bad faith. Astro cites *Pro–Mold and Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1571 (Fed.Cir.1996), for the proposition that "there is no legal basis for a holding that inequitable conduct, or the assertion of a patent procured through inequitable conduct constitutes unfair competition." *See also Concrete Unlimited v. Cementcraft, Inc.*, 776 F.2d 1537, 1539 (Fed.Cir. 1985) To be sure, Astro is correct in its assertion that "a patent-holder [has] the right to enforce its patent until the patent [is] found invalid and...such enforcement [does] not constitute unfair competition." *Dow Chemical Co.*, 139 F.3d at 1476.

However, contrary to Astro's arguments, neither *Pro–Mold* and *Concrete Unlimited* on the one hand, nor the propositions for which they are cited on the other, preclude this Court from relying upon Astro's inequitable conduct before the PTO as evidence of Astro's bad faith. As noted earlier, bad faith is an element "in addition to [those] required by § 43(a)." *Zenith*, 182 F.3d at 1353. *Pro–Mold* was decided by the Federal Circuit on February 7, 1996, more than three years prior to the Circuit's analysis of the tension between patent laws and the Lanham Act in *Zenith*. As such, *Pro–Mold*'s assessment of inequitable conduct did not encompass the "bad faith" element required by *Zenith*. Moreover, this Court's previous determination that Astro's behavior met the requirements for a Lanham Act violation is in accordance with *Pro–Mold*, to the extent that it did not rely upon Astro's actions before the PTO.[13] *See e.g., Zenith*, 182 F.3d at 1349 (concluding that *Pro–Mold* only proscribes basing a § 43(a) claim solely on inequitable conduct, and noting that a viable § 43(a) claim may rely upon alleged marketplace statements).

Similarly, Astro points to *Chemical Unlimited* in support of its belief that "a finding of invalidity or unenforceability due to alleged inequitable conduct before the PTO does not support a finding of bad faith." In *Dow Chemical, supra*, the Federal Circuit examined the applicability of *Concrete Unlimited* in the context of an unfair competition claim:

> [In *Concrete Unlimited*,] [t]his court held that the patent-holder had the right to enforce its patent until the patent was found invalid and that such enforcement

---

**12.** Specifically, S & G questions, "How else can one characterize defendants' failure to advise the Examiner of seven obviously relevant prior art devices, some even having geared-down output speeds, that Astro could not possibly have overlooked and then to charge the trade on a wholesale basis with infringement, when there was no infringement even had the patent been valid, and to intimidate the trade with overblown threats, and then to continue this litigation after defendants [sic] original misdeeds before the Patent Office had been made of record in the 1998 deposition of Stephen Fisher?" (Pl.'s Reply. Mem. at 5.)

**13.** In its previous Opinion, this Court determined that: (1) Astro made false representations about its eraser wheels, when it marked them with the '914 patent or the term "patent pending"; (2) Astro's eraser wheels traveled in interstate commerce; (3) Astro's misrepresentations, coupled with its letters to S & G's customers, had the impact of deceiving S & G's customers and of diverting sales from S & G to Astro; and (4) Astro's statements to S & G's customers were an incorrect and misleading recitation of the law, and thereby caused injury to S & G.*M. Eagles*, 68 F.Supp.2d at 506.

did not constitute unfair competition. Significantly, the district court had held that the patent-holder had *not* engaged in inequitable conduct (although the patent was held to be invalid for obviousness) and this ruling was not disturbed by the court. Thus, in *Concrete Unlimited*, the good faith enforcement of a reputedly unenforceable patent was held not to constitute unfair competition. The instant case, however, concerns an allegation of bad faith enforcement of a reputedly unenforceable patent. Unlike *Concrete Unlimited*, the tortfeasor here allegedly knew that its patent was unenforceable when it engaged in market misconduct. 139 F.3d at 1476.

The dichotomy examined in *Dow Chemical* is present here: S & G alleges that Astro knew that the '914 patent was unenforceable when it threatened to sue S & G and S & G's customers. Thus, *Concrete Unlimited* does not hold that a Lanham Act claim based in part on inequitable conduct could not, as a matter of law, succeed. *See id.*

Indeed, Astro does not allege, nor can this Court find any authority suggesting, that Astro's inequitable conduct before the PTO may not serve as evidence of Astro's bad faith in its subsequent contacts with S & G and S & G's customers in the marketplace. *See id.* at 1477–78 (suggesting that alleged inequitable conduct before the PTO may serve as proof of bad faith in intentional interference with contractual relations claim); *Rhenalu v. Alcoa, Inc.*, 2000 WL 1868178, *3 (D.Del.2000) ("Bad faith can be demonstrated by a patentee's threatening to enforce a patent that it knew was . . . procured by fraud on the Patent and Trademark Office . . ."); *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070 (Fed.Cir.1998) ("[I]f the evidence shows that the asserted patent was acquired by means of either a fraudulent omission and that the party as-

serting the patent was aware of the fraud when bringing suit, such conduct can expose a patentee to liability under the antitrust laws."). Astro does not now contend that it was unaware of the circumstances constituting the fraud upon the PTO at the time that it began publicizing its patent. In fact, the evidence confirms Astro's contemporaneous knowledge of the fraud before the PTO. *See e.g., M. Eagles*, 68 F.Supp.2d at 502 (discussing Astro's awareness of relevant prior art and its failure to disclose such material information to the PTO during the prosecution of the '914 patent).

This Court therefore concludes that Astro's threats to S & G and S & G's customers regarding a patent secured through inequitable conduct before the PTO were made in bad faith. Such a determination does not unfairly encroach upon Astro's right to enforce its patent. *See Zenith*, 182 F.3d at 1354 ("[P]atent law is not frustrated [by providing a § 43(a) cause of action where bad faith is shown] because bad faith marketplace statements concerning patents do not further the purposes of the patent law.") To hold otherwise would be inconsistent with the Federal Circuit's direction in *Zenith. Id.* ("[I]f a patentee knows that the patent is invalid, [or] unenforceable . . . yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out.") Having found, by clear and convincing evidence, that Astro's actions were made in bad faith, this Court grants S & G's cross-motion for summary judgment as to its Lanham Act claim.

### E. *Astro's motion and S & G's cross-motion for summary judgment as to S & G's false marking claim*

In its previous Opinion, this Court observed that S & G had not demonstrated that Astro marked its eraser wheels with

the '914 patent number or the term "patent pending" in an intentional attempt to deceive its customers. *M. Eagles*, 68 F.Supp.2d at 505. This Court concluded that there were genuine issues of material fact as to Astro's intent with respect to the markings on its eraser wheels such that the matter was inappropriate for summary judgment consideration. *Id.* In its current motion for summary judgment, Astro argues that there is no evidence supporting S & G's false marking claim, as the wheels marked with "patent pending"[14] are covered by U.S. Patent No. 5,624,990 ("the '990 patent"). In its cross-motion for summary judgment, S & G responds that Astro's use of the marking "patent pending" was improper because another patent application, that of 3M in support of patent number 5,190,620 ("the '620 patent"), concluded that Astro's eraser wheel did not fall under the '990 patent. This Court finds that S & G fails to demonstrate that Astro's use of a "patent pending" stamp on its eraser wheels constituted false marking.[15]

The false marking law provides that:

[w]hoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the pur-

pose of deceiving the public ... [s]hall be fined not more than $500 for every such offense.

35 U.S.C. § 292(a). "Requisites for liability under § 292 include that the advertising or use of the word 'patented' be made in conjunction with a device which is not patented *and an intent to deceive.*" *Sadler–Cisar, Inc. v. Commercial Sales Network, Inc.*, 786 F.Supp. 1287, 1296 (N.D.Ohio 1991) (emphasis added); *See also Arcadia*, 786 F.2d at 1125 ("As a general proposition, there can be no violation of § 292 absent an evidentiary showing that the false marking or mismarking was for the purpose of deceiving the public.") (internal quotations omitted). S & G has "the burden of proof of showing that [Astro] acted with the specific intent to deceive the public." *Sadler–Cisar*, 786 F.Supp. at 1296. This Court may draw reasonable inferences from uncontested facts in order to prove Astro's intent to deceive. *Id.* However, "[i]f [Astro] then come[s] forward with evidence of good faith, this may rebut a showing of actual intent to deceive the public." *Id.*

Astro avers that its Smart Eraser pads are covered by the '990 patent, and thus its "patent pending" marking was not misleading. Additionally, Astro contends that

**14.** This Court interprets "patent pending" to refer to a pending *application* for a patent. *See Arcadia Machine & Tool, Inc. v. Sturm, Ruger & Co., Inc.*, 786 F.2d 1124, 1125 (Fed. Cir.1986) ("Patents [themselves] are never pending."). Particularly, Astro asserts that the "patent pending" mark referred to its pending patent application which later became patent '990.

**15.** Although S & G's moving papers charge Astro with false marking for both the "patent pending" stamp and the '914 patent number marking, this Court notes that the Second Amended Complaint refers only to Astro's use of the "patent pending" mark. (Second Amended Compl. ¶ 35; compare with First

Amended Compl. ¶ 35.) S & G offers no explanation for this omission. Thus, this Court's analysis is limited to whether Astro's use of the "patent pending" mark on its eraser wheels constituted false marking. *See Nat'l Rural Elec. Cooperative Assoc. v. Breen Capital Services Corp.*, 2001 WL 294086, *4 (D.N.J.2001) ("Once plaintiff amends the original complaint, the Amended Complaint becomes the superseding document and renders the original complaint legally inoperative...[t]herefore, this Court will only look to the facts as alleged in the four corners of the Amended Complaint.") (citing *Fritz v. Standard Security Life Insurance Company of New York*, 676 F.2d 1356, 1358 (11th Cir.1982)).

S & G has failed to proffer any evidence suggesting that Astro used the "patent pending" mark with an intent to deceive the public. In response, S & G submits one page from a document which purports to be a patent application in support of the '620 patent.[16] (Harold James Cert., dated January 16, 2001, Ex. 15.) S & G argues that because the '620 patent states that Astro's eraser pad is not covered by the '990 patent, Astro must have intended the market to assume that the pad was covered by the '914 patent.

However, S & G fails to cite a single authority for the proposition that this Court should accept the allegations of a third party as to the applicability of a patent to a particular product. Moreover, S & G does not contest Astro's statement that the wheel reviewed under the '620 patent "was of an old black Astro eraser wheel product that never bore a patent pending mark," and is distinct from the tan-colored Astro Smart Eraser pad which was stamped "patent pending." (Def.'s Reply Mem. at 11; Steven Fisher Decl., dated November 20, 1997 ¶¶ 4, 5; Steven Fisher Decl., dated October 29, 1998 ¶ 10.)

 In fact, S & G fails to offer any persuasive evidence that Astro acted with an intent to deceive in its act of stamping "patent pending" on its products. Astro admits that it marked some of its Eraser pads with the '914 patent number due to its belief that the '914 patent covered the pad's use with Astro's pneumatic driver.

(Fisher Declaration, dated October 29, 1998 ¶ 11.) However, Astro's marking of some of its pads with the '914 patent does not, by itself, indicate that Astro was also referring to the '914 patent (as opposed to the '990 patent) when it marked other pads with "patent pending." S & G does not challenge the validity of the '990 patent. Similarly, other than offering the '620 patent application, S & G does not offer evidence disputing whether the '990 patent actually covers Astro's Eraser pads. Thus, even if S & G had carried its burden of proof-and this Court concludes that it has not-Astro has offered sufficient rebuttal evidence of its good faith in using the "patent pending" mark. Accordingly, Astro's motion for summary judgment as to S & G's false marking claim is granted, and S & G's cross-motion as to its false marking claim is denied. *See e.g., Arcadia,* 786 F.2d at 1125 (summary judgment appropriate where no evidence of patentee's intent to deceive public).

### F. Astro's motion and S & G's cross-motion for summary judgment as to S & G's tortious interference and unfair competition claims

 Pursuant to *Zenith, supra,* this Court must first determine whether S & G's state law claims for tortious interference and unfair competition are preempted by federal patent law. The *Zenith* court held that "state court claims, including tortious interference claims, based on publicizing a patent in the marketplace are not

---

16. In his certification, Harold James describes the single-page document as "a true copy of a page from the official file history of 3M owned Patent No. 5,190,620..." (James Cert. ¶ 18.) Astro suggests that this document is inadmissable hearsay. (Defs.' Reply Mem. at 11.) To be sure, the document proffered by S & G is plainly incomplete: although it is marked with the page number "9," no other pages are attached. (James Cert., Ex. 15.) Moreover, there is no identifiable title, date, or author on the page. (*Id.*) As a result, the persuasive weight of this document is questionable at best. *See* Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits shall...set forth such facts as would be admissible in evidence...") Nonetheless, because this Court concludes that the document does not constitute evidence of Astro's intent to mislead, it does not decide whether the document is admissible for the purposes of the instant motions.

preempted by the patent laws if the claimant can show that the patentholder acted in bad faith in its publication of the patent." 182 F.3d at 1355 (citing *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1322, 1336–37 (Fed.Cir. 1998)). Therefore, "to avoid patent law preemption of such state law tort claims, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." *Zenith*, 182 F.3d at 1355; *See also, RDP Technologies, Inc. v. Viro Int'l Corp.*, 2001 WL 1083762, *6 (D.Del.2001).

 This Court has already determined that Astro's threats to S & G's customers were made in bad faith in its evaluation of S & G's Lanham Act claim. As Astro argues, S & G's state tort claims "are all essentially unfair competition claims alleging injury as a result of Astro's notice of infringement letters." (Astro's Mem. at 9.) This Court's analysis and conclusion that Astro's statements to S & G's customers constituted bad faith therefore apply with equal force to S & G's tortious interference and unfair competition claims. Accordingly, S & G's state tort claims are not preempted by federal law.[17]

### 1. Tortious interference [18]

 "An action for tortious interference protects a business entity's right 'to pursue [its] business, calling or occupation free from undue influence or molestation.'" *Printing Mart–Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 750, 563 A.2d 31 (1989) (citing *Louis Kamm, Inc. v. Flink*, 113 N.J.L. 582, 175 A. 62 (E. & A.1934)). A party complaining of tortious interference must demonstrate: (1) that it had a reasonable expectation of an economic advantage; (2) that was lost as a direct result of defendants' malicious interference; and (3) that it suffered losses thereby. *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 770 A.2d 1158, 1170 (N.J.2001). A finding of malice is a vital

17. To its disadvantage, Astro challenges S & G's state tort claims only on the issue of the bad faith requirement. Nonetheless, this Court will examine the elements of tortious interference and unfair competition as defined by New Jersey courts in evaluating Astro's motion and S & G's cross-motion for summary judgment as to S & G's state tort claims. (A federal court whose jurisdiction over a state claim is based on diversity, *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), or on pendency to a federal claim, *System Operations, Inc. v. Scientific Games Development Corp.*, 555 F.2d 1131, 1136 (3d Cir.1977), must apply the conflicts of law principles of the forum state. New Jersey, the forum state in this case, has abandoned the traditional rule in tort cases that the law of the place of wrong governs. *Rose v. Port of New York Authority*, 61 N.J. 129, 139–40, 293 A.2d 371 (1972). Instead, it looks to the law of the jurisdiction "having the most significant relationship and closest contacts with the occurrence and the parties." *Id.* at 140, 293 A.2d 371 (citations omitted).) Here, the parties do not dispute the application of New Jersey law to S & G's state claims.

18. The Second Amended Complaint states causes of action against Astro for both tortious interference with contractual relations and tortious interference with prospective economic advantages. (Second Amended Compl. ¶¶ 29, 32.) The requirements for each claim, discussed *infra*, are identical except that the tortious interference with contractual relations claim requires proof of an existing contract. *Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*, 912 F.Supp. 747, 772 (D.N.J.1995). S & G consents to the dismissal of its claim for tortious interference with contractual relations, since "S & G's customers and potential customers were not contractually obligated to purchase wheels from S & G." (Pl.'s Mem. at 33.) Accordingly, Astro's motion for summary judgment as to S & G's claim for tortious interference with contractual relations is granted in Astro's favor. This Court will thus confine its analysis to S & G's claim for tortious interference with a prospective economic advantage.

element to a finding of tortious interference. Although malice is often confused with bad faith, the two terms are distinct in this context. As such, this Court's finding of bad faith does not necessarily compel a finding of malice. For clarification, the Supreme Court of New Jersey offered the following definition of malice:

Malice is not used [as part of a tortious interference claim] in its literal sense to mean 'ill will'; rather, it means that harm was inflicted intentionally and without justification or excuse. It is determined on an individual basis, and the standard is flexible, viewing the defendant's actions in the context of the facts presented. Often it is stated that the relevant inquiry is whether the conduct was sanctioned by the 'rules of the game,' for where a plaintiff's loss of business is merely the incident of healthy competition, there is no compensable tort injury. The conduct must be injurious and trangressive of generally accepted standards of common morality or of law. The line is clearly drawn at conduct that is fraudulent, dishonest, or illegal and thereby interferes with a competitor's economic advantage. *Lamorte,* 770 A.2d at 1170–71.

S & G "bears the burden of proving the absence of justification." *Mac Dougall v. Weichert,* 144 N.J. 380, 677 A.2d 162, 174 (1996).

It is undisputed that Astro contacted businesses from which S & G had a reasonable expectation of an economic advantage.[19] (Second Amended Compl. ¶ 12; Exhs. 7, 8.) Moreover, it is clear that S & G suffered economic losses due to Astro's contacts with S & G's customers and vendors: at least one party has signed a stipulation to no longer purchase S & G products in exchange for release from the present litigation. (*See e.g.,* Michael Doane Decl., Exh. 1, Stipulation of Dismissal by Counterclaim Defendant C.R.C. Line, Inc., dated July 14, 1998.) Thus, the critical issue before this Court is whether Astro's interference was "without justification or excuse", and thus malicious. *MacDougall,* 677 A.2d at 174 (citing *Printing Mart,* 563 A.2d at 37).

S & G maintains that, by sending letters to S & G's customers and potential customers in the market, rather than filing suit against S & G, Astro acted in a manner intending to damage S & G's status in the tool market. Generally, however, a patentee has no obligation to litigate its patent rights in lieu of notifying alleged infringers. *Mirafi, Inc. v. Murphy,* No. 90–1074, slip op. at 3 (Fed.Cir.1991). Nonetheless, this Court finds that Astro's actions fall outside of the "generally accepted standards of common morality." *Lamorte,* 770 A.2d at 1171. Although Astro is correct in its assertion that a patentee has a "right to exclude others from making, using, and selling the invention and to enforce those rights until [its] patent is held invalid," such rights are inextricably rooted in the patentee's good faith. Having found, by clear and convincing evidence, that Astro secured its patent through inequitable conduct before the PTO, this Court concludes that Astro cannot hide behind its presumption of good faith to refute S & G's charge of malice.

Indeed, this Court can conceive of no circumstance where Astro's aggressive publication of a fraudulently procured patent would be considered "sanctioned by the rules of the game." *Id.* at 1170. Accordingly, this Court finds that Astro's interference with S & G's prospective busi-

19. Astro admitted that it "sent notice of infringement letters to tool distributors and sellers to inform them that sales of S & G's 'Autobody Eraser Wheel' product infringe the '914 patent..." (Answer to Second Amended Compl. ¶ 12.)

ness was malicious, and grants S & G's cross-motion for summary judgment as to its tortious interference with prospective economic advantage claim. Astro's motion as to this claim is therefore denied.

### 2. Unfair competition [20]

■■■ S & G argues, and this Court agrees, that its common law unfair competition claim is essentially the same as its Lanham Act claim.[21] *See SK&F Co. v. Premo Pharmaceutical Laboratories, Inc.*, 625 F.2d 1055, 1065 (3d Cir.1980) ("The federal law of unfair competition is not significantly different... from that of New Jersey."); *Birthright v. Birthright, Inc.*, 827 F.Supp. 1114, 1141 (D.N.J.1993) ("It is well established that the test for a common law unfair competition claim under New Jersey law is essentially the same as under the federal Lanham Act.") Similarly, the requirements of the New Jersey Fair Trade Act also mimic those of the Lanham Act. *Eli Lilly and Company v. Roussel Corp.*, 23 F.Supp.2d 460, 495 ("N.J. Stat. Ann. § 56:4–1 is the statutory equivalent of § 43(a) of the Lanham Act and the two can be treated alike for analytical purposes.") (internal quotations omitted) (citing *Ciba-Geigy*, 747 F.2d 844, 854 (3d Cir. 1984) and *Warner Lambert Co. v. McCrory's Corp.*, 718 F.Supp. 389, 396 (D.N.J. 1989)).

Accordingly, this Court does not repeat its analysis of S & G's Lanham Act claim here. For the same reasons that this Court grants S & G summary judgment as to its Lanham Act claims, it also grants S & G summary judgment as to its state law unfair competition claims. *Id.* ("For the same reasons defendants violated Section 43(a)(1)(A) of the Lanham Act, defendants are also guilty of common law unfair competition."); *See also SK&F*, 625 F.2d at 1065 ("Since, except for the interstate commerce requirement, the elements of the unfair competition torts proscribed by New Jersey law and by section 43(a) of the Lanham Act are the same, we need not repeat the factual discussion as to likelihood of success on the merits of the federal cause of action.").

### G. S & G's cross-motion for summary judgment as to its attorneys' fees claim

■■■ In its previous Opinion, this Court denied S & G's application for attorneys' fees. Specifically, this Court concluded that despite its finding that Astro had engaged in inequitable conduct before the PTO, there was no evidence establishing that the case was so exceptional as to warrant the grant of attorneys' fees. *M. Eagles*, 68 F.Supp.2d at 507. ("Although this Court concludes that Astro's conduct may have been improper regarding the marking of its product and the letters sent to S & G's customers, S & G has not

---

**20.** Specifically, the parties seek summary judgment as to S & G's unfair competition claims, raised separately in the Second Amended Complaint, pursuant to New Jersey common law and the New Jersey Fair Trade Act, N.J. STAT. ANN. § 56:4–1. (Second Amended Compl. ¶¶ 21, 27.) N.J. STAT. ANN. § 56:4–1 states: "No merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals."

**21.** The parties' briefs only minimally distinguish the elements of New Jersey's common law unfair competition claim, and those required by N.J. STAT. ANN. § 56:4–1. (Pl.'s Mem. at 28–31.) This Court's review of the relevant case law shows a disagreement as to whether the two causes of action are identical. *See Duffy v. Charles Schwab & Co., Inc.*, 97 F.Supp.2d 592, 600 n. 7 (D.N.J.2000). Although this Court disposes of the two claims similarly, it makes no determination as to the whether and how they are distinguishable. *Id.*

presented evidence that this is an exceptional case.") To be sure, a finding of "exceptional circumstances" is the first step in a two-step analysis of a motion for attorneys' fees, pursuant to 35 U.S.C. § 285. *J.P. Stevens Co., Inc. v. Lex Tex Ltd., Inc.*, 822 F.2d 1047, 1050 (Fed.Cir. 1987) ("[First,] the district court must determine whether the case is 'exceptional;' if it is, then it is within the court's discretion to award attorneys' fees to the prevailing party."). The prevailing party seeking an award of attorneys' fees must prove exceptional circumstances by clear and convincing evidence. *Reactive Metals and Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582 (Fed.Cir.1985).

In 2001, after the filing of this Court's previous Opinion, the Federal Circuit issued its opinion in *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370 (Fed.Cir.2001). In *Brasseler*, the Circuit Court made clear that a "prevailing party may prove the existence of an exceptional case by showing: inequitable conduct before the PTO . . ." 267 F.3d at 1380. *See also, J.P. Stevens*, 822 F.2d at 1050 ("It was not error for the district court to find this to be an 'exceptional case' based on our prior decision . . . of inequitable conduct in the prosecution of the . . . patent."); *Rohm & Haas Co. v. Crystal Chemical Co.*, 736 F.2d 688, 691–92 (Fed.Cir.1984) ("[E]xceptional cases have involved . . . fraud or other inequitable conduct during prosecution before the PTO."). Thus, contrary to its earlier reasoning, this Court's finding of Astro's inequitable conduct before the PTO constitutes proof of exceptional circumstances. As a result, this Court moves on to step two in the attorneys' fees analysis: whether this Court should exercise its discretion in granting S & G an award. *Reactive*, 769 F.2d at 1582.

Astro relies on the Federal Circuit's decision in *Reactive, supra*, for the proposition that "[a] finding of exceptional circumstances does not . . . mandate an award of attorney[s'] fees." 769 F.2d at 1582. In *Reactive*, the Federal Circuit overturned a district court's award of attorneys' fees, concluding that a "case cannot be found 'exceptional' under § 285 because of unconscionable conduct during discovery." *Id.* at 1585. Thus, the Federal Circuit's decision was based entirely on the district court's error in concluding that the facts before it constituted an exceptional case. Conversely, in the instant case, the parties do not challenge the basis for a finding of exceptional circumstances, i.e., this Court's conclusion that Astro engaged in fraud before the PTO. Rather, the parties dispute whether the facts before this Court support the exercise of its discretion in favor of awarding attorneys' fees to S & G. *Rohm & Haas*, 736 F.2d at 691 ("The exercise of discretion in favor of an [attorneys' fees] award should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular lawsuit be left to bear the burden of his own counsel fees which prevailing litigants normally bear." (quoting *Park—in Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir.1951))).

Despite Astro's assertions that S & G has failed to demonstrate any unfairness or bad faith on its part, this Court finds that attorneys' fees are warranted in the instant case. Not only is there clear and convincing evidence of inequitable conduct before the PTO, but as discussed above, Astro's assertions of infringement to S & G and S & G's customers were made in bad faith. *See id.* at 693 ("Attorney fee awards have also been affirmed by this court when the basis for finding the

case to be 'exceptional' was 'fraud' in procuring the patent sued upon as well as misconduct during suit and a bad faith assertion of infringement.") Astro has not proffered any reason persuading this Court to reserve its discretion in awarding attorneys' fees to S & G. Accordingly, this Court grants S & G's cross-motion for summary judgment as to its claim for attorneys' fees.

## III. CONCLUSION

For the reasons stated above, this Court: GRANTS Defendant Fisher's motion to dismiss for lack of personal jurisdiction; GRANTS Astro's motion for summary judgment as to S & G's tortious interference with contractual relations; GRANTS Astro's motion for summary judgment as to S & G's false marking claim; and DENIES Astro's motion for summary judgment as to S & G's unfair competition (both common law and statutory) and tortious interference with prospective economic advantage claims. Additionally, this Court: GRANTS S & G's cross-motion for summary judgment as to its Lanham Act, attorneys' fees, unfair competition (both common law and statutory), and tortious interference with a prospective economic advantage claims; and DENIES S & G's cross-motion for summary judgment as to its false marking claim.