# United States Court of Appeals for the Federal Circuit

05-1224, -1228


M. EAGLES TOOL WAREHOUSE, INC.
(doing business as S&G Tool Aid Corp.),

Plaintiff-Cross Appellant,

v.


FISHER TOOLING COMPANY, INC.
(doing business as Astro Pneumatic Tool Co.),

Defendant-Appellant,

and

STEPHEN FISHER,

Defendant.


Harold James, Epstein Drangel Bazerman & James LLP, of New York, New York, argued for plaintiff-cross appellant.

Louis S. Mastriani, Adduci, Mastriani & Schaumberg, LLP, of Washington, DC, argued for defendant-appellant. With him on the brief was Michael L. Doane.

Appealed from: United States District Court for the District of New Jersey

Judge Joseph A. Greenaway, Jr.

# United States Court of Appeals for the Federal Circuit

05-1224, -1228

M. EAGLES TOOL WAREHOUSE, INC.
(doing business as S&G Tool Aid Corp.),

Plaintiff-Cross Appellant,

v.

FISHER TOOLING COMPANY, INC.
(doing business as Astro Pneumatic Tool Co.),

Defendant-Appellant,

and

STEPHEN FISHER,

Defendant.

_____

DECIDED:  February 27, 2006

_____

Before LOURIE, RADER, and BRYSON, <u>Circuit Judges</u>.

LOURIE, <u>Circuit Judge</u>.

Fisher Tool Company, Inc., doing business as Astro Pneumatic Tool Company ("Astro"), appeals from the decision of the United States District Court for the District of New Jersey granting summary judgment in favor of M. Eagles Tool Warehouse, Inc., doing business as S&G Tool Aid Corp. ("S&G"). The court held that U.S. Patent 5,259,914 ("the '914 patent") is unenforceable due to inequitable conduct, that Astro violated 15 U.S.C. § 1125(a) (the "Lanham Act"), that Astro committed unfair competition under state common law and under the

New Jersey Fair Trade Act, and that Astro engaged in tortious interference with prospective economic advantage. The court awarded compensatory damages, punitive damages, and attorney fees. M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc., 68 F. Supp. 2d 494 (D.N.J. 1999) ("M. Eagles I"); M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc., 205 F. Supp. 2d 306 (D.N.J. 2002) ("M. Eagles II"); S&G Tool Aid Corp. v. Fisher Tooling, Civil Action No. 97-1568 (D.N.J. Dec. 30, 2004) ("M. Eagles III"). S&G cross-appeals from that decision, arguing that the '914 patent is invalid for obviousness and failure to name the true inventor, unenforceable for patent misuse, and not infringed by S&G. Because there was no clear and convincing evidence demonstrating an intent to engage in inequitable conduct, we reverse the district court's grant of S&G's motion for summary judgment of inequitable conduct. Because the holdings under the Lanham Act, on tortious interference with prospective economic advantage, on state law unfair competition, and the award of attorney fees were all based on the erroneous inequitable conduct determination, we vacate those holdings. As for the cross-appeal on the invalidity, patent misuse, and infringement issues, because summary judgment on those issues was denied, or they were not addressed by the district court, they are not properly before us on appeal. They may be considered on remand as appropriate.

BACKGROUND

The '914 patent is entitled "Portable Vehicle Adhesive Remover for Removing Pinstripes, Decals, Side Moldings and Other Adhered Items from a Vehicle" and was issued to Irving Fisher as inventor and to Fisher Tool Company

as assignee. The invention relates to a combination of a pneumatic driver with an eraser wheel to remove decals from a motor vehicle. The invention includes a motor unit assembled in a housing, a shank extending from the motor unit, and an eraser wheel attached to the shank. The device operates by using compressed air to rotate the eraser wheel. The rotating eraser wheel engages with an adhered decal on a vehicle causing friction and generating heat, which in turn warms the adhesive and causes the decal to lose its adhesion.

Irving Fisher, Astro's founder and former president, filed the '914 patent application with a declaration stating that at the time of the filing, he was not aware of any relevant prior art, and did not perform a novelty search for the purpose of discovering any such prior art. Six months after filing the patent application, Irving Fisher died, and his son, Stephen Fisher, took over as Astro's president and directed the prosecution of the '914 patent. The examiner thereafter issued an Office Action, rejecting claims not relevant to this appeal and allowing present claims 1-3.[1] The examiner expressly noted that present claims 1-3 were allowable "because none of the art of record shows all of the detailed internal workings of the instant claims including the wave washer, the valve screw and 'O' rings, the valve stem and spring, the exhaust sleeve and 'O' ring, and the roll pins."

After obtaining the patent, Astro marketed and sold its patented device both in a combination, as a pneumatic driver with an eraser wheel, and as separate components. When the eraser wheel was sold individually, it was

---

[1] The claims allowed in the '914 patent application were originally claims 4-6 which are present claims 1-3.

marked with a "patent pending" label[2] and also with the '914 patent number. In 1996, Astro accused S&G of infringement of the '914 patent. Astro stated in its infringement letter that it believed that "S&G's sales of rubber eraser pads in the United States are contributing to or inducing others to infringe the '914 patent, in violation of 35 U.S.C. § 271 (b) and (c)." Astro concluded its letter by stating that if S&G continued to sell its products, Astro would "not hesitate to initiate litigation to enforce its rights and recover all applicable damages and costs." S&G responded by denying any infringement, alleging that its eraser wheel could be used with any pneumatic driver, not solely with Astro's, and hence was capable of a noninfringing use. Various letters were thereafter exchanged between Astro and S&G with no resolution of the dispute.

Astro then sent infringement letters to a number of distributors and suppliers, many of which sold S&G's eraser wheels. Those letters stated that "customers who use [S&G's wheels] in a tool that is not made by Astro Pneumatic Tool infringe the patent." The letters gave S&G's customers three options: cease all sales of S&G's wheels, screen all the customers and refuse to sell S&G's wheels to any who would use them with a tool not made by Astro, or continue to sell S&G's wheels without screening all the customers. If the last option were chosen, the letter stated that the customer could be subject to a lawsuit. After receiving the letters, all the companies that previously sold S&G's wheels stopped their sales of the eraser wheels.

---

[2] Astro asserts that the "patent pending" label referred to the patent application that ultimately issued as U.S. Patent 5,624,990, which purportedly covers the process for making the wheel and the product made by that process.

S&G commenced this lawsuit against Astro on March 27, 1997, in the United States District Court for the District of New Jersey, claiming that Astro engaged in unfair competition, tortious interference with contractual relations and with prospective economic advantage, false marking, and violations of the Lanham Act and the New Jersey Fair Trade Act. S&G sought a judgment that it did not infringe the '914 patent and an injunction ordering Astro to cease its threatening communications with S&G's customers. S&G also sought damages for Astro's alleged tortious acts. Astro counterclaimed that S&G contributorily infringed and induced infringement of the '914 patent. Astro sought an injunction preventing S&G from further infringement of the patent and also sought damages.

On November 18, 1998, S&G filed a motion for summary judgment of invalidity and unenforceability of the '914 patent, and, in the alternative, noninfringement. In M. Eagles I, the district court denied S&G's motion for summary judgment of invalidity because S&G had not satisfied its burden of establishing obviousness or lack of proper inventorship by clear and convincing evidence. However, the district court granted S&G's summary judgment motion on inequitable conduct, determining that there was clear and convincing evidence of materiality and intent to deceive the United States Patent and Trademark Office ("PTO"). As to materiality, the court found that a model die grinder that Astro had been selling for twenty years, the Model 220, was material prior art that had not been submitted to the PTO. According to the court, the Model 220 contained many of the same components that were present in the

pneumatic driver of the '914 patent. The court observed that the examiner allowed present claims 1-3 of the patent expressly because he could not find prior art that disclosed all of the limitations of the claims. Because the Model 220 contained some of those elements, the court found it "clear that the Model 220 would have been material to the examiner's analysis." The court also noted that the Model 220 was not cumulative of other prior art before the examiner because it had elements that were not found in other prior art references.

The district court inferred that Astro intended to deceive the PTO solely from its nondisclosure of the Model 220. The court observed that "it is undisputed that Irving Fisher and Stephen Fisher were familiar with the critical features of both the driver in the '914 Patent and the Model 220 driver." According to the court, because the examiner notified Astro that he could not find many of the limitations of the claims in the prior art, and the Model 220 possessed some of them, Astro must have known of the Model 220's relevance. Moreover, because Astro did not disclose to the PTO the Model 220 even after receiving the examiner's statement and did not offer a good faith explanation for its omission, the district court found that Astro intended to deceive the examiner. After stating that it weighed the materiality of the omission and Astro's intent, the court concluded that the patent should be held to be unenforceable.

After determining there was inequitable conduct, the district court declined to address the patent misuse and infringement arguments and dismissed all the motions relating to infringement as moot. The court also denied S&G's motion for summary judgment regarding violation of the false marking statute, 35 U.S.C.

§ 292, because S&G did not show that Astro marked its eraser wheels with the '914 patent number with the intent to deceive the public.

The district court next found that Astro violated the Lanham Act. The court concluded that Astro made false representations concerning its eraser wheels by marking them with the '914 patent number and with the label "patent pending," when the wheel itself was not protected by a patent. According to the court, those misrepresentations, coupled with Astro's letters to S&G's customers, deceived customers and diverted sales from S&G to Astro. The court finally found that the case was not exceptional and denied an award of attorney fees under 35 U.S.C. § 285 because S&G did not present clear and convincing evidence constituting "exceptional" circumstances.

On March 20, 2001, Astro filed a new motion for summary judgment on the unfair competition and tortious interference claims in light of the recent holding in Zenith Electronics Corp. v. Exzec Inc., 182 F.3d 1340 (Fed. Cir. 1999). S&G filed a cross-motion requesting that the court grant summary judgment in its favor as to its Lanham Act, state unfair competition, and tortious interference claims, and award attorney fees pursuant to 35 U.S.C. § 285. In 2002, in M. Eagles Tool II, the district court reevaluated its Lanham Act holding because Zenith Electronics required a showing of bad faith for a Lanham Act violation. The court cited its previous determination of inequitable conduct as evidence of bad faith in Astro's subsequent contacts with S&G and its customers. The court therefore found clear and convincing evidence that Astro's actions were made in bad faith and granted S&G's motion for summary judgment as to its Lanham Act

claim. The court granted summary judgment as to the state law unfair competition claims for the same reason.

The district court relied on its inequitable conduct determination in order to hold for S&G on its tortious interference with prospective economic advantage claim. The court noted that such a claim requires malice, and held that there was malice in Astro's '914 patent having been procured inequitably. The court determined that Astro's actions fell outside of the "generally accepted standards of common morality" and therefore constituted tortious interference with prospective economic advantage when Astro sent letters to S&G's customers and suppliers instead of commencing a lawsuit, and because those letters were sent in relation to an unenforceable patent.

Although the district court had previously denied S&G's motion for summary judgment as to its attorney fees claim, the court revisited that holding and awarded attorney fees because it considered that <u>Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.</u>, 267 F.3d 1370 (Fed. Cir. 2001), suggested that a case may be found to be exceptional based upon a showing of inequitable conduct. The court held that its finding of Astro's inequitable conduct before the PTO was proof of exceptional circumstances and allowed the award of attorney fees.

After having found Lanham Act, state law unfair competition, and tortious interference violations, the court held a two-day hearing in 2004 to determine the damages, which it then awarded to S&G. <u>M. Eagles III</u>, Civil Action No. 97-1568 (D.N.J. Dec. 30, 2004).

Astro timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review the district court's grant of summary judgment <u>de</u> <u>novo</u>, reapplying the standard applicable at the district court. <u>See</u> <u>Rodime PLC v. Seagate Tech., Inc.</u>, 174 F.3d 1294, 1301 (Fed. Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In addition, in deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

I. Inequitable Conduct

Patent applicants and those substantively involved in the preparation or prosecution of a patent application owe a "duty of candor and good faith" to the PTO. 37 C.F.R. § 1.56(a) (2004); <u>see</u> <u>also</u> <u>Molins PLC v. Textron, Inc.</u>, 48 F.3d 1172, 1178 (Fed. Cir. 1995). A breach of this duty may constitute inequitable conduct, which can arise from a failure to disclose information material to patentability, coupled with an intent to deceive the PTO. <u>Molins</u>, 48 F.3d at 1178. Both of these elements, intent and materiality, must be proven by clear and convincing evidence. <u>J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.</u>, 747 F.2d 1553, 1559 (Fed. Cir. 1984). "[M]ateriality does not presume intent, which is a

separate and essential component of inequitable conduct." <u>Manville Sales Corp.</u> <u>v. Paramount Sys., Inc.</u>, 917 F.2d 544, 552 (Fed. Cir. 1990). "Intent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." <u>Hebert v. Lisle Corp.</u>, 99 F.3d 1109, 1116 (Fed. Cir. 1996). Although it is not impermissible to grant summary judgment of inequitable conduct, this court "urges caution" in making an inequitable conduct determination at the summary judgment stage. <u>Paragon Podiatry Lab, Inc. v. KLM Labs., Inc.</u>, 984 F.2d 1182, 1190 (Fed. Cir. 1993).

On appeal, Astro asserts that the district court erred in finding the '914 patent to be unenforceable for inequitable conduct because there was no evidence of intent to deceive the PTO.[3] Astro argues that the court improperly found intent to deceive solely from the fact that Astro failed to disclose the Model 220 to the PTO, without relying on any evidence, direct or circumstantial, that the applicant or attorney deliberately withheld information concerning the Model 220. Astro also contends that it did not know of the alleged relevance of the Model 220 and, without knowing of its importance, it could not have purposefully omitted the disclosure. Although the district court found that Astro must have known of the Model 220's importance from the examiner's statement, Astro asserts that there are differences between the claims and the Model 220 that prohibit such an assumption. Moreover, Astro asserts that even if the failure to disclose the

---

[3] Astro also argues that that the Model 220 was not material. Because our decision rests on an analysis of lack of intent, it is unnecessary to discuss materiality. <u>See</u> <u>Allen Archery, Inc. v. Browning Mfg. Co.</u>, 819 F.2d 1087, 1094 (Fed. Cir. 1987) ("Since we uphold the district court's findings that the nondisclosure was not intentional, it is not necessary to consider the finding of non-materiality. . .")

Model 220 constituted gross negligence, that cannot be the sole basis for finding an intent to deceive. Without any evidence of intent to deceive, Astro contends that the court improperly used a theory of strict liability to find that the failure to disclose the Model 220 constituted inequitable conduct.

S&G responds that the district court did not clearly err in inferring intent because the sequence of facts demonstrates that Astro acted with a culpable mind to deceive the PTO. S&G asserts that the examiner expressly stated that he was allowing the claims because he could not find certain limitations of the claims in the prior art. The Model 220 contained those limitations, according to S&G, and Irving Fisher and Stephen Fisher, as successive presidents of Astro, were familiar with the Model 220, which had been in existence for 20 years. After receiving the examiner's statement, S&G asserts that Astro must have known that the Model 220 was material because of the similarities between the claims and the Model 220, and should have disclosed it to the examiner. By not disclosing the Model 220 to the PTO after Astro was aware of its materiality, S&G contends that the district court did not err in inferring an intent to deceive the PTO. Finally, S&G focuses on the fact that Astro never presented any evidence that the failure to disclose was inadvertent, and asserts that the failure to provide any good faith explanation for that failure is evidence of intent.

The issue central to the disposition of this case is whether a lack of a good faith explanation for a nondisclosure of prior art, when nondisclosure is the only evidence of intent, is sufficient to constitute clear and convincing evidence to support an inference of intent. We agree with Astro and conclude that a failure

to disclose a prior art device to the PTO, where the only evidence of intent is a lack of a good faith explanation for the nondisclosure, cannot constitute clear and convincing evidence sufficient to support a determination of culpable intent.

To satisfy the requirement of the intent to deceive element of inequitable conduct, "the involved conduct, viewed in light of all the evidence, including evidence of good faith, must indicate sufficient culpability to require a finding of intent to deceive." See Paragon Podiatry Lab. v. KLM Lab., 984 F.2d 1182, 1189 (Fed. Cir. 1993) (quoting Kingsdown Med. Consultants Ltd. v. Hollister, Inc., 863 F.2d 867, 876 (Fed. Cir. 1988)). Intent need not be proven by direct evidence. See Merck & Co., Inc. v. Danbury Pharm. Inc., 873 F.2d 1418 (Fed. Cir. 1989). Intent is generally inferred from the facts and circumstances surrounding the applicant's overall conduct, especially where there is no good faith explanation for a nondisclosure. Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd., 394 F.3d 1348, 1354 (Fed. Cir. 2005). There still must be a factual basis, however, for a finding of intent. Hebert, 99 F.3d at 1116. The only evidence that the district court relied upon in its determination that Astro intended to deceive the PTO was Astro's failure to offer a good faith explanation of its nondisclosure of the Model 220. To be sure, just as a good faith explanation can be presented as evidence to refute an inference of intent, and usually is so presented, the absence of such an explanation can constitute evidence to support a finding of intent. When the absence of a good faith explanation is the only evidence of intent, however, that evidence alone does not constitute clear and convincing evidence warranting an inference of intent.

S&G also argues that the examiner's statement that he was allowing the claims because he could not find all of its limitations in the prior art, when allegedly the Model 220 contained those limitations, put Astro on notice of the relevance of the Model 220, thereby providing additional support for inferring an intent to deceive. However, the record recites evidence of the numerous differences between the claims and the Model 220, and we fail to see how the examiner's statement that only certain limitations were not in the prior art mandates the conclusion that Astro became aware of the Model 220's relevance. In an inequitable conduct determination based upon a nondisclosure, the applicant must know, or should have known, of the materiality of the reference for an inference of intent. Molins PLC v. Textron, Inc., 48 F.3d 1172, 1181 (Fed. Cir. 1995). The district court found that Astro "undeniably became aware of the relevancy of the Model 220" once the examiner stated that he was allowing the claims because of its unique "inner workings." But, important differences between claims 1-3 of the '914 patent and the Model 220 preclude the conclusion on summary judgment that Astro must have known that the Model 220 was relevant. We thus disagree with the district court's conclusion that Astro must have been aware of the significance of the Model 220 from the examiner's statement alone.

There is sufficient factual evidence in the record to suggest that claim 1 was so different from the Model 220 such that a reasonable fact-finder could find that Astro would not have appreciated its relevance from the examiner's statement alone. Claim 1 of the '914 patent is a narrow and lengthy claim, and

recites in detail nearly all of the features of the invention (such a claim is often referred to as a "picture claim").  The invention disclosed in claim 1 consists of a geared pneumatic driver connected to an extending shank that in turn is connected to an eraser wheel.  Each major element contains numerous internal components, all expressly recited in claim 1.  The Model 220, which is a tool driver that has been in existence for over twenty years, differs from claim 1 in that it does not contain an extending shank or an eraser wheel and operates at a much higher speed than the invention in claim 1.   It therefore lacks many of the limitations of claim 1, including all the components relating to the extending shank and eraser wheel, e.g., certain ball bearings, nuts, and wave washers.   In fact, it appears that many limitations in claim 1, not just those noted by the examiner, are not found in the Model 220.[4]

The examiner, in allowing present claims 1-3, stated that he was allowing those claims because "none of the art of record shows all of the detailed inner workings of the instant claims including the wave washer, the valve screw and 'O' rings, the valve stem and spring, the exhaust sleeve and 'O' ring, and the roll pins" (emphases added).  Although the examiner listed certain specific items that were lacking in the prior art, that list was nonexhaustive as indicated by the use of the word "including."  The examiner could not find "all" of the "detailed inner workings" of claim 1. Many of those components, as indicated above, are not found in the Model 220.  Because of the differences between the Model 220 and claim 1, the examiner's statement of reasons of allowance do not make it

---

[4]        It appears that the Model 220 lacks all of the components in paragraphs (d), (f), (g), and (h) of claim 1 of the '914 patent and many of the components in paragraph (e). '914 patent, col. 11, ll. 14-50.

inevitably clear for purposes of summary judgment that Astro must have known or should have known of the Model 220's relevance. In light of those differences, a reasonable fact-finder could accept a contention that Astro did not intend to mislead. We therefore do not agree with the district court's conclusion that the examiner's statement was sufficient to make Astro necessarily aware of the relevancy of the Model 220.

Furthermore, <u>Bruno Independent Living Aids, Inc.</u>, in which we held that a lack of a good faith explanation of a nondisclosure can be evidence of intent to deceive, does not provide the necessary support for the district court's conclusion. 394 F.3d at 1354. The standard of review was different in <u>Bruno Independent Living Aids, Inc.</u>, in which we reviewed the district court's determination on intent for clear error. This case was decided on summary judgment and so we review this judgment <u>de</u> <u>novo</u>. Moreover, in <u>Bruno Independent Living Aids, Inc.</u>, there were circumstances beyond the lack of a good faith explanation from which one could infer intent. In that case, an official of Bruno disclosed material prior art to the FDA while simultaneously withholding it from the PTO. We found that because Bruno disclosed the prior art to one agency and not the other, and offered no good faith explanation for not disclosing the prior art to the PTO, there was substantial evidence for the district court's determination of intent. In this case, there is no evidence from which to infer intent beyond the lack of a good faith explanation for the nondisclosure. There was no deliberate choice to disclose the information to one agency but not to the other. Furthermore, the inventor was unable to provide a good faith explanation

because he died six months after the filing of the application. Without any other evidence of intent, we cannot find that a lack of a good faith explanation for the nondisclosure is sufficient to constitute clear and convincing evidence that Astro acted with a culpable intent to deceive the PTO.

In light of all the facts and circumstances surrounding the applicant's conduct, we conclude that Astro's acts do not demonstrate on summary judgment that Astro had a culpable intent during prosecution. "Intent to deceive should be determined in light of the realities of patent practice, and not as a matter of strict liability whatever the nature of the action before the PTO." Northern Telecom, Inc. v. Datapoint Corp., 908 F.2d 931, 939 (Fed. Cir. 1990). The district court's finding of inequitable conduct based on the nondisclosure of the Model 220 essentially amounted to a finding of strict liability for nondisclosure. Such is not the law. Even if there were evidence of gross negligence in nondisclosure, which was not found, that would not necessarily constitute inequitable conduct. Kingsdown Med. Consultants Ltd. v. Hollister, Inc., 863 F.2d 867, 873 (Fed. Cir. 1988). Given the dearth of evidence as to the element of intent in light of the clear and convincing evidentiary standard, and the disputed assumption made by the district court concerning Astro's knowledge of the relevance of the Model 220, we reverse the district court's grant of summary judgment of inequitable conduct.

II. Lanham Act, Tortious Interference, and Unfair Competition

Having found that the district court erred in its inequitable conduct determination, we vacate the holdings on the Lanham Act, tortious interference,

and state law unfair competition claims because they were essentially based on the inequitable conduct judgment. In M. Eagles II, the district court acknowledged that a Lanham Act violation requires a finding of bad faith. The court then went on to decide that its finding of inequitable conduct constituted evidence of bad faith and so affirmed its previous determination that Astro violated the Lanham Act. Because we reverse on inequitable conduct, we thus vacate on the Lanham Act claim. As to the tortious interference and state law unfair competition claims, the court stated that "[t]his Court's analysis and conclusion that Astro's statements to S&G's customers constituted bad faith therefore apply with equal force to S&G's tortious interference and unfair competition claims." M. Eagles II, 205 F. Supp. 2d at 320. The court thus relied on its inequitable conduct determination in order to conclude that Astro's interference with S&G's prospective business was malicious. Because that tortious interference claim was predicated on a finding of inequitable conduct, that judgment is also vacated. Similarly, the court found state law unfair competition because the inequitable conduct determination constituted the requisite evidence of bad faith, and that holding therefore must also be vacated.

### III.    Exceptional Case and Attorney Fees

The district court's determination that this case was exceptional and the award of attorney fees must also be vacated because those conclusions were based on the determination of inequitable conduct. The district court stated that "this Court's finding of Astro's inequitable conduct before the PTO constitutes

proof of exceptional circumstances." Because we find no inequitable conduct, the attorney fees claim lacks support.

IV.    Patent Validity, Patent Misuse, Infringement

S&G also cross-appeals, arguing that in the event the holding of unenforceability is reversed, we should conclude that the '914 patent is invalid for obviousness and failure to name the true inventor, that the patent was misused, and it was not infringed. As to the patent invalidity cross-appeal, in M. Eagles I the court denied S&G's motion for summary judgment of invalidity because S&G had not met its burden of proof. Denials of summary judgment are ordinarily not appealable, and we will not decide the issue of invalidity here. See Novo Nordisk A/S et al. v. Becton Dickinson and Co., 304 F.3d 1216, 1221 (Fed. Cir. 2002) (citing Glaros v. H.H. Robertson Co., 797 F.2d 1564, 1573 (Fed. Cir. 1986)). The record is not sufficiently developed on this issue and we are not in a position to decide it.

Because the district court declined to consider the motions on infringement or patent misuse, having deemed them to be moot after its finding of inequitable conduct, there has not been a final decision on those issues and they are not properly before us. The district court may consider whether there should be further proceedings on any of those issues.

CONCLUSION

The district court erred in its determination of inequitable conduct because there was insufficient evidence on summary judgment to infer an intent to deceive the PTO. We therefore reverse the district court's grant of summary

judgment of inequitable conduct. The holdings on the Lanham Act, state law unfair competition, tortious interference, and attorney fees are therefore vacated. We do not address the issues of patent validity, infringement, and patent misuse.

COSTS

No costs.

<u>REVERSED IN PART, VACATED IN PART, and REMANDED.</u>